### ROBERT AUBIN ET AL. *v.* JAMES A. MILLER, JR., ET AL.
### (AC 20744)

Foti, Flynn and Healey, Js.

Argued May 3—officially released August 7, 2001

*Kevin A. Coles*, for the appellant (defendant Munson Builders, Inc.).

*Michael P. Kaelin*, with whom, on the brief, was *James M. Moriarty*, for the appellees (plaintiffs).

*Opinion*

FOTI, J. The defendant Munson Builders, Inc.,[1] appeals from the judgment of the trial court, rendered

---

[1] Because the named defendant is not involved in this appeal, we refer in this opinion to the defendant Munson Builders, Inc., as the defendant.

after a trial to the court, in favor of the plaintiffs, Robert Aubin and Denyse Aubin. On appeal, the defendant claims that the court improperly (1) concluded that the plaintiffs were diligent in their attempt to secure a mortgage, (2) construed the terms of paragraph twenty-three of the parties' contract, (3) concluded that the parties' initial letter of agreement did not control the escrow agreement, (4) concluded that the defendant had recouped moneys that it had spent on changes in the construction plan that were requested by the plaintiffs, (5) failed to allow the defendant the opportunity to prove the cost of building a larger structure, (6) found that the defendant had converted the plaintiffs' money and (7) awarded interest on the entire amount of the down payment and stated in its memorandum of decision that the defendant would have to pay offer of judgment interest to the date of satisfaction of the judgment. We affirm the judgment of the trial court.

The court reasonably could have found the following facts. In June, 1996, the plaintiffs met with the president of the defendant corporation, Calvin Munson, to discuss the purchase of certain real property located in Fairfield and the construction of a home thereon. On July 23, 1996, the parties entered into a sales agreement. The sales agreement provided for a down payment of $74,900, which included $7490 that was paid when the plaintiffs submitted an offer to purchase on July 2, 1996, and $5000 paid pursuant to the terms of a letter of agreement dated July 2, 1996. The plaintiffs paid the remaining balance due on the down payment to the defendant after deducting the $12,490 that they already had paid.

Paragraph nineteen of the sales agreement contained a mortgage contingency clause on which the effectiveness of the contract depended. The mortgage contingency clause provided: "It is expressly understood and agreed by the parties hereto that this contract is condi-

tioned on the Purchaser being able to obtain a mortgage loan in the amount of FOUR HUNDRED THOUSAND DOLLARS ($400,000.00) from a recognized lending institution which loan shall be for a period not to exceed thirty (30) years and shall bear interest at the prevailing rate of said institution. Purchaser shall make prompt and immediate application with diligence, including the providing of all documentation necessary to support said application promptly. If Purchaser is unable to obtain a commitment for such loan on or before August 16, 1996, and if Purchaser so notifies Seller in writing care of James A. Miller, Jr., Attorney at Law, 140 Sherman Street, P.O. Box 826 Fairfield, Connecticut, 06430, on or before August 16, 1996, at 5:00 p.m., then this contract shall be null and void and the Purchaser shall be entitled to the return of all sums paid by the Purchaser on account of this contract, except $250.00 to cover the cost of preparing this contract. Should the Purchaser fail to provide such notice or fulfill the foregoing requirements, this contract shall continue in full force and effect, and the rights and obligations of the parties hereunder shall be as if this paragraph did not appear in this contract."

On July 30, 1996, Robert Aubin sent a fully executed copy of the sales agreement to People's Bank, a recognized lending institution. On August 6, 1996, Robert Aubin completed additional documents as requested by People's Bank, including additional credit and employment release authorization forms, a borrower's certification and authorization, another copy of the mortgage application and a rate lock-in agreement. He also advised the bank of the August 16, 1996 deadline.

On August 8, 1996, Robert Aubin's employer, Reader's Digest, prepared an employment verification form, and its senior vice president for strategic planning and human resources sent the bank a letter confirming that Robert Aubin would be given an interest free corporate

loan ranging from $150,000 to $250,000 to assist in his relocation. That loan would be secured by a second mortgage on the property.

On August 13, 1996, Reader's Digest terminated Robert Aubin's employment. He thereafter advised his attorney, Kathryn Hunter, and the account officer at People's Bank, Mary Neidermeier, that Reader's Digest had terminated his employment. On August 14, 1996, Hunter notified the defendant and its attorney, James A. Miller, Jr., by facsimile and registered mail that the plaintiffs were unable to secure a mortgage and, therefore, that they sought the return of all sums paid under the sales agreement pursuant to paragraph nineteen of the sales agreement.

Despite the plaintiffs' repeated demands, the defendant refused to return the plaintiffs' deposit. On August 10, 1998, the plaintiffs commenced the present action by service of process upon Munson Builders, Inc., and its attorney, James A. Miller, Jr., who was the escrow agent under the sales agreement. The first count of the complaint alleged breach of contract against the defendant. The second count alleged breach of the escrow agreement by Miller. The third count of the complaint alleged violations of the Connecticut Unfair Trade Practices Act, General Statutes § 42-110a et seq., against Miller. The fourth count of the complaint alleged theft against the defendant and Miller, and the fifth count of the complaint alleged conversion against the defendant and Miller. After a trial to the court, the court rendered judgment in favor of the plaintiffs and against the defendant as to counts one and five. The court further rendered judgment in favor of Miller on all counts, and in favor of the defendant as to the fourth count. The court awarded damages to the plaintiffs in the amount of $74,650, plus prejudgment interest in the amount of $26,749.58 and offer of judgment interest in the amount of $20,006.03, for a total amount of

$121,405.61. The defendant appeals from that judgment. Additional facts will be provided as necessary.

## I

The defendant first claims that the court improperly determined that the plaintiffs were diligent in their application for the required loan. We disagree.

Before we address the defendant's claim, we first articulate the applicable standard of review. "If the factual basis of the court's decision is challenged, our review includes determining whether the facts set out in the memorandum of decision are supported by the evidence or whether, in light of the evidence and the pleadings in the whole record, those facts are clearly erroneous." (Internal quotation marks omitted.) *Keefe v. Norwalk Cove Marina, Inc.*, 57 Conn. App. 601, 606, 749 A.2d 1219, cert. denied, 254 Conn. 903, 755 A.2d 881 (2000). "With regard to the trial court's factual findings, the clearly erroneous standard of review is appropriate." *Empire Paving, Inc.* v. *Milford*, 57 Conn. App. 261, 265, 747 A.2d 1063 (2000). "The trial court's legal conclusions are subject to plenary review. [W]here the legal conclusions of the court are challenged, we must determine whether they are legally and logically correct and whether they find support in the facts set out in the memorandum of decision . . . . [T]he interpretation of the contract is a matter of law and our review is plenary." (Internal quotation marks omitted.) *Yellow Page Consultants, Inc.* v. *Omni Home Health Services, Inc.*, 59 Conn. App. 194, 199, 756 A.2d 309 (2000).

"It is well established that [i]n a case tried before a court, the trial judge is the sole arbiter of the credibility of the witnesses and the weight to be given specific testimony. . . . The credibility and the weight of expert testimony is judged by the same standard, and the trial court is privileged to adopt whatever testimony he reasonably believes to be credible. . . . On appeal,

we do not retry the facts or pass on the credibility of witnesses." (Citations omitted; internal quotation marks omitted.) *Powers* v. *Olson*, 252 Conn. 98, 105, 742 A.2d 799 (2000).

After careful review of the record, we conclude that there is ample evidence in the record to support the court's finding that the plaintiffs made reasonable efforts to secure a mortgage. The defendant is asking this court to reconsider the evidence and to reach a different finding. We cannot do so.

"Reasonableness . . . is an objective standard, involving an analysis of what a person with ordinary prudence would do given the circumstances, without accounting for any particular knowledge or skill. . . . In contracts as in tort cases, [t]he test is external, not subjective; that is, the question is how would a person of ordinary prudence in such a situation have behaved, not how did the defendant in fact behave. . . . Whether the plaintiff's actions constituted reasonable efforts to satisfy the contractual condition is a factual determination for the trial court." (Citations omitted; internal quotation marks omitted.) *Phillipe* v. *Thomas*, 3 Conn. App. 471, 475, 489 A.2d 1056 (1985).

The defendant makes several different arguments to support its position that the plaintiffs did not make reasonable attempts to secure a mortgage. We address each argument in turn.

First, the defendant claims that because Denyse Aubin did not herself apply for a mortgage after the bank denied Robert Aubin's application, the plaintiffs did not make reasonable efforts. The defendant's argument is without merit. Here, the court found that the plaintiffs disclosed all assets and debts to the bank, including the fact that Denyse Aubin had no income. We agree with the court that the law does not require the performance of a useless act; *Barber* v. *Jacobs*, 58

Conn. App. 330, 336, 753 A.2d 430, cert. denied, 254 Conn. 920, 759 A.2d 1023 (2000); and common sense dictates that someone with no income would not be approved for a $400,000 mortgage loan.

The defendant also argues that the evidence shows that Reader's Digest did not fire Robert Aubin, but that he left his job voluntarily, and, therefore, the plaintiffs did not make reasonable efforts to secure a mortgage.[2] The trial court specifically found that the official reason given by Reader's Digest for Robert's departure was nothing more than a pleasant corporate gloss given to make the termination appear less harsh. Again, we conclude that the evidence in the record supports the court's finding that Reader's Digest fired Robert Aubin, and, therefore, the court's finding was not clearly erroneous.

The defendant further argues that the court was bound to consider exhibit Q, which consisted of the organizational announcement by Reader's Digest of Robert Aubin's departure, for its truth, and not for the limited purpose of showing the organizational announcement. We note that "[t]he trial court's ruling on evidentiary matters will be overturned only upon a showing of a clear abuse of the court's discretion." (Internal quotation marks omitted.) *State* v. *Wright*, 62 Conn. App. 743, 757, 774 A.2d 1015, cert. denied, 256 Conn. 919, 774 A.2d 142 (2001). The court properly determined that the announcement was hearsay, and the court considered the evidence for the limited purpose of showing the company's announcement and not for the truth of the statements contained therein. Moreover, the court concluded that "even if the organizational announcement was admitted as a full exhibit . . . it is nothing more than corporate posturing and

---

[2] An organizational announcement by Reader's Digest stated: "I regret to announce that Robert Aubin, president of Reader's Digest U.S.A., is leaving the company for personal reasons related to the complexities of his family's relocation to the United States."

merely providing a polite reason for Aubin leaving Reader's Digest." Notwithstanding the announcement, the court specifically found Robert Aubin's testimony that Reader's Digest fired him believable and credible. We do not reconsider the credibility of the witnesses on appeal, which is properly left within the discretion of the trial court. *Greene* v. *Perry*, 62 Conn. App. 338, 343, 771 A.2d 196 (" '[i]t is the trier's exclusive province to weigh the conflicting evidence, determine the credibility of witnesses and determine whether to accept some, all or none of a witness' testimony' "), cert. denied, 256 Conn. 917, 773 A.2d 943 (2001). Accordingly, we conclude that the record supports the court's conclusion that Reader's Digest fired Robert Aubin and that the plaintiffs made reasonable efforts to secure a mortgage. The court did not abuse its discretion in limiting the admissibility of exhibit Q, nor was its finding that Reader's Digest fired Robert Aubin clearly erroneous.

## II

The defendant next claims that the court improperly failed to consider that paragraph twenty-three of the purchaser's rider to the sales agreement authorized the release of funds to the defendant. The defendant claims that once those funds were released to the defendant, the funds were not required to be returned pursuant to the mortgage contingency clause in paragraph nineteen. We disagree.

The following additional facts are necessary for our resolution of the defendant's claim. Pursuant to a letter of agreement dated July 2, 1996, the plaintiffs released $5000 to the defendant so that construction of the home could commence. Upon completion of the foundation, Miller released $24,966.99 to the defendant. The court did not allow the defendant to raise those setoffs, in part, because the defendant did not attempt to do so until the eve of trial. The court did, however, consider

the defendant's argument that it was entitled to keep that money pursuant to the terms of the sales agreement.

We begin our analysis of the defendant's claim by first stating the applicable standard of review. "If a contract contains definitive language, the determination of what the parties intended by their contractual commitments is a question of law subject to plenary review by this court. . . . *Gateway Co.* v. *DiNoia*, 232 Conn. 223, 229–30, 654 A.2d 342 (1995)." (Internal quotation marks omitted.) *Plikus* v. *Connecticut Light & Power Co.*, 42 Conn. App. 299, 301, 679 A.2d 401 (1996). Because the defendant's claims relate to clear and unambiguous language in the parties' contract, our review is plenary.

The defendant first claims that paragraph twenty-three of the rider to the sales agreement entitles it to retain the escrow funds that the plaintiffs paid over. We disagree.

Paragraph twenty-three of the purchasers' rider to the contract of sale, which was incorporated into the contract of sale agreement,[3] provides: "The amount of $74,900 paid by Purchaser on account of the Purchase Price (the 'Escrow Funds') shall be held in escrow by James A. Miller, Jr., Esq., Seller's attorney (the 'Escrow Agent'), and shall be released to Seller as follows: (i) one-third ($24,966) upon the completion of the foundation and basement and (ii) the balance ($49,934) upon completion of the framing, including the roof. Escrow Agent shall notify Purchaser at such time as the Escrow Funds, or any portion thereof, are released to Seller. In the event of any dispute with respect to the disposition of said funds, the Escrow Agent may retain the Escrow Funds in escrow until the dispute is settled, or

---

[3] Paragraph twenty-two of the sales agreement incorporated the purchasers' rider into the agreement.

may deposit the Escrow Funds into a court of competent jurisdiction in the State of Connecticut, and thereupon be released and discharged of any and all obligation and liability hereunder. The Escrow Agent shall not be liable for any error or omission or action which it may take, and the Purchaser and the Seller do each hereby jointly and severally agree to indemnify and save the Escrow Agent harmless of and from any and all liability in connection with this paragraph, unless the same is the result of the Escrow Agent's negligence or willful breach of the terms of this paragraph. In the event the Escrow Funds are deposited in an interest-bearing account, any interest earned thereon shall belong to the Seller if the sale is completed pursuant to the terms hereof, but shall belong to and be released to Purchaser upon the down payment being returned to the Purchaser pursuant to the terms of this Contract."

As previously stated, paragraph nineteen of the sales agreement provides in pertinent part: "If Purchaser is unable to obtain a commitment for such loan . . . this contract shall be null and void and the Purchaser shall be entitled to the return of *all sums paid by the Purchaser on account of this contract,* except $250.00 to cover the cost of preparing this contract." (Emphasis added.) Because paragraph twenty-three of the sales agreement was incorporated into the contract, it follows that the sums paid pursuant to that paragraph were "sums paid by the Purchaser on account of this contract," and, therefore, the plaintiffs were entitled to have the money returned once the "null and void" mechanism contained in paragraph nineteen was triggered by the plaintiffs' inability to secure a mortgage.

Similarly, paragraph nineteen of the sales agreement also governs the $5000 that the plaintiffs paid to the defendant pursuant to the letter agreement. Indeed, the letter agreement preceded the sales agreement and

merely served as evidence that the plaintiffs paid the defendant $5000 to initiate breaking ground and the construction of the foundation. This is further evidenced by the footnote to paragraph two, subsection (b), of the sales agreement, which provides: "Receipt of $5000.00 provided in accordance with letter agreement attached hereto is acknowledged, balance due upon signing is $62,410.00." Therefore, we conclude that the defendant's argument that it is entitled to offset the amount owed to the plaintiffs by the money that it already received is without merit. The sales agreement controls all of the money that the plaintiffs paid to the defendant on account of the purchase of the property and the construction of the home thereon. The court properly concluded that the plaintiffs were entitled to the return of their deposit of $74,900, less the $250 for the preparation of the contract, i.e., $74,650.

We further conclude that the defendant's argument that the plaintiffs should be held responsible for the additional expenses is unpersuasive. As the defendant concedes in its brief, it took a significant risk by proceeding with construction before the mortgage condition was satisfied. We do not agree with the defendant that it is unfair to force it to return the funds to the plaintiffs. That is precisely what the defendant bargained for in its contract. Because the defendant was a party to the contract, we presume that it was aware of the mortgage condition, and it cannot now complain that the court held it to the terms to which it previously had agreed.

III

The defendant next claims that the court improperly concluded that the letter of agreement did not control the payment of funds to the defendant. We disagree.

As a threshold matter, we note that our standard of review is plenary because the determination of this issue involves construing clear and unambiguous language of

the contract. Sec *Plikus* v. *Connecticut Light & Power Co.*, supra, 42 Conn. App. 301–302. The defendant argues that the letter of agreement was intended to protect it when a purchaser demands an immediate start to construction. Specifically, the defendant argues that it was the intent of the parties that the plaintiffs compensate the defendant immediately for the work that it had initiated prior to the contract. The defendant further argues that this intent persisted through the negotiation of the language of the escrow clause contained in paragraph twenty-three. The defendant contends that once funds were released under the escrow agreement, such funds were no longer governed by the sales agreement, but rather were governed by the letter of agreement. The plaintiffs respond that there is nothing in either paragraph twenty-three of the sales agreement or the letter of agreement that overrides the mortgage contingency clause contained in paragraph nineteen of the sales agreement.

"Our interpretation of these contract provisions is guided by well established principles of contract law. A contract must be construed to effectuate the intent of the parties, which is determined from the language used interpreted in the light of the situation of the parties and the circumstances connected with the transaction. . . . [T]he intent of the parties is to be ascertained by a fair and reasonable construction of the written words and . . . the language used must be accorded its common, natural, and ordinary meaning and usage where it can be sensibly applied to the subject matter of the contract. . . . Where the language of the contract is clear and unambiguous, the contract is to be given effect according to its terms. A court will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity . . . . Similarly, any ambiguity in a contract must emanate from the language used in the contract rather than from one

party's subjective perception of the terms." (Internal quotation marks omitted.) *Tallmadge Bros., Inc.* v. *Iroquois Gas Transmission System, L.P.*, 252 Conn. 479, 498, 746 A.2d 1277 (2000).

We agree with the plaintiffs that there is no language in either paragraph twenty-three of the sales agreement or the letter of agreement that could be read to override the mortgage contingency clause. We will not torture the language of the contract or search for another meaning when the language of the contract is clear and unambiguous. Id. As we previously concluded in part II of this opinion, the mortgage contingency clause contained in paragraph nineteen of the sales agreement governs the disposition of all moneys paid by the plaintiffs to the defendant on account of the sales agreement. Therefore, we conclude that the court properly determined that the defendant was not entitled to keep any sums paid over to it by the plaintiffs other than the $250 provided for in paragraph nineteen for the cost of preparing the contract.

IV

The defendant next claims that the court improperly determined that it had recouped the money that it had spent for the plaintiffs' changes when the property was sold. The defendant claims that it was entitled to compensation for the expenditures made on construction in compliance with the plaintiffs' plan. We are not persuaded.

As we previously have concluded in parts II and III of this opinion, paragraph nineteen of the sales agreement controls the return of all sums paid by the plaintiffs on account of the contract. Accordingly, we conclude that the court properly determined that the defendant was not entitled keep the money that the plaintiffs paid to it beyond the $250 for preparing the contract.

## V

The defendant next claims that the court improperly failed to allow it the opportunity to prove the cost of constructing a larger building than it originally had planned. Specifically, the defendant argues that because the plaintiffs required a new plan for a structure that was 143 square feet larger than the one that the defendant originally had planned to construct on the property, and because the defendant already had poured the foundation for the larger structure prior to the mortgage contingency's coming into effect, the defendant should have been allowed to prove how much the revised plan added to its costs. Thus, the defendant claims that the court's failure to allow it to make such a showing prejudiced its defense at trial. We disagree.

As we already have concluded in parts II, III and IV of this opinion, the mortgage contingency contained in paragraph nineteen of the sales agreement controls the resolution of the defendant's claims arising out of the purchase of the property and the construction of the home thereon. The court properly limited the defendant's proof at trial because the issue of how much the defendant expended as a result of the plaintiffs' plans was not relevant to the issue of whether the mortgage contingency contained in paragraph nineteen properly had been triggered. Under the circumstances of the present case, the court did not abuse its discretion by not allowing the defendant to present evidence of setoffs. See *Gore* v. *People's Savings Bank*, 40 Conn. App. 219, 226, 670 A.2d 332 (1996) (" 'trial court has broad discretion to determine the relevancy of evidence, and we will not disturb a trial court's ruling on the admissibility of evidence in the absence of a clear abuse of discretion' ").

## VI

The defendant next claims that the court improperly found that it had converted the plaintiffs' money. Specif-

ically, the defendant argues that it did not convert the plaintiffs' money because a genuine dispute existed as to whether the defendant was entitled to the deposit. We disagree.

The defendant is essentially claiming that the record does not contain sufficient evidence to support a finding of conversion. The applicable standard of review is whether the court's conclusion that the evidence supported the finding of conversion was clearly erroneous. "We have long held that a finding of fact is reversed only when it is clearly erroneous. . . . A factual finding is clearly erroneous when it is not supported by any evidence in the record or when there is evidence to support it, but the reviewing court is left with the definite and firm conviction that a mistake has been made. . . . Simply put, we give great deference to the findings of the trial court because of its function to weigh and interpret the evidence before it and to pass upon the credibility of witnesses." (Citations omitted; internal quotation marks omitted.) *American Heritage Agency, Inc.* v. *Gelinas*, 62 Conn. App. 711, 717, 774 A.2d 220, cert. denied, 257 Conn. 903, 777 A.2d 192 (2001). We cannot say that the court's finding of conversion was clearly erroneous based on the evidence before it.

"Conversion is an unauthorized assumption and exercise of the right of ownership over goods belonging to another, to the exclusion of the owner's rights." *Discover Leasing, Inc.* v. *Murphy*, 33 Conn. App. 303, 309, 635 A.2d 843 (1993). To establish a prima facie case of conversion, the plaintiffs had to establish that (1) the deposit given to the defendant belonged to the plaintiffs, (2) the defendant deprived the plaintiffs of their funds for an indefinite period of time, (3) the defendant's conduct was unauthorized and (4) the defendant's conduct harmed the plaintiffs. See id.

Here, the court found that the language of the sales agreement was so clear that even a lay person could

understand it. The court found that the contract became null and void on August 16, 1996, and that the defendant should have realized that. The court found that after the contract had become null and void, it was incumbent on the defendant to return the plaintiffs' deposit, less $250 for the preparation of the agreement. The court found that despite repeated demands for the return of the money, the defendant refused to return it. The court found that the defendant's conduct was wrongful and without justification. Finally, the court found that the plaintiffs were harmed when they were deprived of their property. After our review of the record, we conclude that all of those findings are supported by the evidence in the record and thus are not clearly erroneous. Therefore, under the facts and circumstances of this case, the court's conclusion that the defendant converted the plaintiffs' money was correct as a matter of law.

## VII

The defendant's final claim is that the court improperly awarded interest to the plaintiffs. The defendant presents its claim in two parts. The defendant first claims that the court improperly awarded interest on part or all of the plaintiffs' deposit. Second, the defendant claims that the court improperly awarded offer of judgment interest to the plaintiffs until the date of satisfaction of the judgment. We disagree with the first claim and agree with the second. We will address the defendant's claims in turn.[4]

## A

The defendant first argues that because a genuine dispute existed as to whether it was entitled to the

---

[4] The defendant does not raise the issue of whether the court made any computational errors in applying the formula it used in awarding interest to the plaintiffs. Therefore, we will not address whether the court's mathematical calculation was correct.

funds and because it was entitled to keep at least a portion of the down payment, the court should not have calculated the interest based on the entire $74,650 that was due the plaintiffs. The defendant's claim is without merit.

General Statutes § 37-3a[5] provides that interest may be recovered and allowed in civil actions as damages for the detention of money after it becomes payable. "It is clear that Connecticut case law establishes that prejudgment interest is to be awarded if, in the discretion of the trier of fact, equitable considerations deem that it is warranted." (Internal quotation marks omitted.) *Hoye* v. *DeWolfe Co.*, 61 Conn. App. 558, 564, 764 A.2d 1269 (2001). As we previously have determined in this opinion, the court properly concluded as a matter of law that the plaintiffs were entitled to the return of their deposit in the amount of $74,650. The court also determined that the defendant's conduct was wrongful and meant to punish the plaintiffs. Furthermore, the court determined that the defendant was not entitled to the setoffs that it had claimed. Those findings by the court were supported by the facts in the record. Therefore, we conclude that the court did not abuse its discretion when it awarded prejudgment interest on the $74,650.

B

The defendant also claims that the court improperly stated in its memorandum of decision that the plaintiffs were entitled to offer of judgment interest through the date of satisfaction of the judgment. The plaintiffs concede in their brief that the court's statement to that

[5] General Statutes § 37-3a provides in relevant part: "Except as provided in sections 37-3b, 37-3c and 52-192a, interest at the rate of ten per cent a year, and no more, may be recovered and allowed in civil actions or arbitration proceedings under chapter 909, including actions to recover money loaned at a greater rate, as damages for the detention of money after it becomes payable. . . ."

effect is incorrect. They note, however, that the court's award of offer of judgment interest through the date of judgment was proper. We agree that the court improperly stated in its memorandum of decision that offer of judgment interest was payable through the date of satisfaction of the judgment, but we also conclude that the court properly awarded offer of judgment interest through to the date of judgment.

The following additional facts and procedural history are necessary for our resolution of this claim. On September 23, 1999, the plaintiffs filed an offer of judgment pursuant to General Statutes § 52-192a[6] in the amount

[6] General Statutes § 52-192a provides: "(a) After commencement of any civil action based upon contract or seeking the recovery of money damages, whether or not other relief is sought, the plaintiff may before trial file with the clerk of the court a written 'offer of judgment' signed by him or his attorney, directed to the defendant or his attorney, offering to settle the claim underlying the action and to stipulate to a judgment for a sum certain. The plaintiff shall give notice of the offer of settlement to the defendant's attorney, or if the defendant is not represented by an attorney, to the defendant himself. Within thirty days after being notified of the filing of the 'offer of judgment' and prior to the rendering of a verdict by the jury or an award by the court, the defendant or his attorney may file with the clerk of the court a written 'acceptance of offer of judgment' agreeing to a stipulation for judgment as contained in plaintiff's 'offer of judgment'. Upon such filing, the clerk shall enter judgment immediately on the stipulation. If the 'offer of judgment' is not accepted within thirty days and prior to the rendering of a verdict by the jury or an award by the court, the 'offer of judgment' shall be considered rejected and not subject to acceptance unless refiled. Any such 'offer of judgment' and any 'acceptance of offer of judgment' shall be included by the clerk in the record of the case.

"(b) After trial the court shall examine the record to determine whether the plaintiff made an 'offer of judgment' which the defendant failed to accept. If the court ascertains from the record that the plaintiff has recovered an amount equal to or greater than the sum certain stated in his 'offer of judgment', the court shall add to the amount so recovered twelve per cent annual interest on said amount, computed from the date such offer was filed in actions commenced before October 1, 1981. In those actions commenced on or after October 1, 1981, the interest shall be computed from the date the complaint in the civil action was filed with the court if the 'offer of judgment' was filed not later than eighteen months from the filing of such complaint. If such offer was filed later than eighteen months from the date of filing of the complaint, the interest shall be computed from the

of $69,500. The defendant did not respond to the offer, and the plaintiffs subsequently recovered an amount greater than the amount proffered in the offer of judgment. The court found that the plaintiffs were entitled to $20,066.03 in offer of judgment interest. In its memorandum of decision, the court stated that "the plaintiffs Robert Aubin and Denyse Aubin are entitled to offer of judgment interest through the date of satisfaction of judgment."

"The question of whether the trial court properly awarded interest pursuant to § 52-192a is one of law subject to de novo review." *Willow Springs Condominium Assn., Inc.* v. *Seventh BRT Development Corp.*, 245 Conn. 1, 55, 717 A.2d 77 (1998). It is well established that "[s]ection 52-192a provides for interest until the date of judgment." *Paulus* v. *LaSala*, 56 Conn. App. 139, 151, 742 A.2d 379 (1999), cert. denied, 252 Conn. 928, 746 A.2d 789 (2000); see also *Willow Springs Condominium Assn., Inc.* v. *Seventh BRT Development Corp.*, supra, 55. "Section 52-192a (b) requires a trial court to award interest to the prevailing plaintiff from the date of the filing of a complaint to the date of judgment whenever: (1) a plaintiff files a valid offer of judgment within eighteen months of the filing of the complaint in a civil complaint for money damages; (2) the defendant rejects the offer of judgment; and (3) the plaintiff ultimately recovers an amount greater than or equal to the offer of judgment. . . . The purpose of § 52-192a is to encourage pretrial settlements by penalizing a party that fails to accept a reasonable offer of settlement in any civil action based upon contract or seeking the recovery of money damages." (Citation

date the 'offer of judgment' was filed. The court may award reasonable attorney's fees in an amount not to exceed three hundred fifty dollars, and shall render judgment accordingly. This section shall not be interpreted to abrogate the contractual rights of any party concerning the recovery of attorney's fees in accordance with the provisions of any written contract between the parties to the action."

omitted; internal quotation marks omitted.) *Lakeview Associates* v. *Woodlake Master Condominium Assn., Inc.*, 239 Conn. 769, 783–84 n.22, 687 A.2d 1270 (1997). "The rules of § 52-192a determine prejudgment interest, the interest from the date when the offer of judgment was filed until the date of judgment. Thereafter, [the plaintiffs are] entitled to interest at the rate of [10] percent[7] on whatever amounts remain unpaid on the judgment rendered in [their] favor. . . . This postjudgment interest is authorized by General Statutes § 37-3a." (Citation omitted; internal quotation marks omitted.) *O'Leary* v. *Industrial Park Corp.*, 211 Conn. 648, 653, 560 A.2d 968 (1989).

Here, the court misstated in its memorandum of decision that the plaintiffs were entitled to offer of judgment interest through the date of satisfaction of the judgment. Interest payable after the judgment would be at the rate of 10 percent pursuant to § 37-3a. See id. We conclude, however, that the court properly awarded offer of judgment interest from the date of the complaint until the date of judgment.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[7] We note that the rate of interest under § 37-3a is not a fixed rate, but rather is the maximum rate of interest that a trial court, in its discretion, can award. See *Sears, Roebuck & Co.* v. *Board of Tax Review*, 241 Conn. 749, 765, 699 A.2d 81 (1997).