[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This case arises out of a failed real estate purchase and sale agreement. The plaintiff was the reported purchaser of a horse farm in Colchester. The defendants are Ray and Teena Gooding, sellers of the horse farm, and the Epstein Agency, the seller's real estate agent. The defendant, Ray Gooding, did not attend trial. At the conclusion of the trial, the court granted the defendant's motion to dismiss the seventh count of the complaint (intentional infliction of emotional harm) and ordered the parties to file briefs on December 12, 2001. The complaint consisted of seven counts: (1) breach of contract — failure to return $35,000 real estate deposit; (2) breach of a covenant of good faith and fair dealing; (3) statutory interest for money wrongfully detained in accordance with Connecticut General Statutes § 37-1; (4) assumpsit — seller's failure to secure return deposit money; (5) violation of CUTPA against the defendants Gooding; (6) violation of CUTPA CT Page 16799 against the Epstein Agency; and (7) intentional/negligent infliction of emotional harm.
By oral motion during the trial, the court dismissed the seventh count of the complaint.
 ISSUES
(1) Whether plaintiffs efforts to obtain financing for this purchase and sale agreement financing contingency were reasonable under the circumstances and whether or not she, in fact, was unable to obtain financing; (2) whether the actions of the defendants Gooding constitute a violation of CUTPA; and (3) whether the Epstein Agency wrongfully used the deposit monies it held for the buyer and sellers as leverage to secure a payment in part or all of a commission claimed to be owed to it by the sellers and whether in doing so Epstein violated the CUTPA statute.
 FACTS
The parties entered into a contract which was in evidence for sale of property consisting of a residence and a horse farm and stable operation, which was owned by the defendant, Teena Gooding, and operated as a business while also used as a residence. In accordance with the contract, the plaintiff deposited with the broker, Epstein, who represented the seller, the amount of $35,000, approximately one-tenth of the $355,000 purchase price. The contract included a mortgage finance contingency under which the obligation of the purchaser was contingent upon her ability to secure financing of at least $150,000 at an interest rate not to exceed 9 percent, with a term of not fewer than 30 years. The contract contained the following provision regarding the particulars of the financing contingency:
H. FINANCING CONTINGENCY BUYERS. Obligations hereunder are contingent upon buyers obtaining an initial commitment for mortgage financing in the amount specified in Number 5A at an initial annual interest rate of not greater than that rate specified in Number 5B for a term of not less than the term specified in 5C and upon such other terms as are customary. If buyers are unable to secure a commitment for such financing within the number of days specified in SE and fails to notify sellers of such inability within the time specified in SE, this contingency will be determined satisfied and this agreement shall continue in full force and effect. If buyers are unable to secure a commitment for such financing within the number of days specified in SE and notified sellers of such inability in writing within the time limit specified in 5E, this agreement shall be null and void and any payment made hereunder shall be CT Page 16800 returnable immediately to the buyers. (Plaintiff's Exhibit 3, page 2.)
It is undisputed that the period of time allowed for obtaining a mortgage was 45 days and that the last of those days was July 20, 2000.
On or about July 14, plaintiff's realtor sent a letter bearing that date by facsimile machine to the realtor representing the Goodings explaining that the plaintiff was withdrawing her offer because she could not get financing "at a rate of 9 percent or less." This same letter also said that the buyer was prepared to submit a new offer with financing terms which should be obtainable. On or about July 20, 2000, the letter was sent by facsimile on behalf of the plaintiff along with a statement of credit denial from Webster Bank to the Goodings' realtor (Epstein) along with a demand that the $35,000 deposit be returned.
Thereafter, there were discussions between Gooding and the plaintiff indicating a possibility that the transaction might be restructured. Eventually, the parties had a conversation and agreed to split the $35,000 deposit with each getting $17,500. Gooding instructed her attorney, John Stawicki, to draw mutual releases, which he did, and mailed to each of the parties. These releases did not release Epstein who was under instruction from both parties not to release the deposit. The releases were executed and exchanged, but the deposit was still not being released. Eventually the plaintiff brought suit both against the sellers and Epstein. The defendant Goodings claim that the plaintiff breached the contract in that she could have obtained a mortgage through Jeffrey Epstein, owner of Advance Mortgage Services. Epstein claims that the plaintiff was told by him over the phone that she would without question get a mortgage commitment meeting the $150,000, 9 percent, 30 year terms of the contract's financing contingency and that the commitment would be finalized by July 20. He claims that she did not want a commitment and, in fact, demanded a denial so that she could get out of the contract. He claims it would appear she changed her mind.
When the plaintiff could not get a denial from Epstein, she tried to get one from Webster Bank. The court finds that Webster Bank also denied the loan and the plaintiff therefore could not get a mortgage from them. With respect to the testimony of Jeffrey Epstein, the court does not find that his testimony is credible. The court finds that he produced no document of approval to the plaintiff and it is clear from his testimony that his company would only have approved the loan if her father was a co-signer on the note. It is already abundantly clear from the testimony of Mr. William Sterling, the plaintiff's father, that not only was he not willing to be a co-signer, that he would in no part be obligated on the note except as a guarantor, not a co-signer. The court believes that Epstein's company's supposed approval of the loan was with the mistaken CT Page 16801 belief that Mr. Sterling would sign as a co-signer. It is clear from the evidence that the plaintiff had no income and that it is difficult to believe that any bank would grant her the loan as requested without a source of income. Webster Bank indicated that it would not grant the loan without a co-signer and the court believes that the Advance Mortgage really takes the same position. The court therefore finds that the plaintiff attempted to get financing but could not do so and the court accepts that testimony as true and accurate.
 DISCUSSION
The court finds that the plaintiff met the reasonable person standard for her efforts to satisfy the financing contingency. She commenced her search for financing immediately after the purchase and sale agreement was signed and over the next week or so contacted five financial institutions explaining the details of her need for financing. She then actually went to Webster Bank and Advance Mortgages and filed written applications which were, in effect, denied. The court finds that the plaintiff did everything necessary to obtain financing and was unable to do so. She could not obtain a commitment or a denial from Advance Mortgage Services and Webster Bank clearly denied the loan. Under all of the circumstances surrounding the case, the court is firmly convinced that the plaintiff met the reasonable person standard in that she pursued financing as guided by her real estate agent and attorney and was not able to obtain the required financing. Accordingly, she proved by the preponderance of the evidence that she was unable to get financing as proscribed by the contract contingency and accordingly she is entitled to the return of the $35,000 deposit money.
On or before July 20, the plaintiff notified the sellers and the realtor about her inability to obtain financing. She was still refused return of the money. The purchase and sale agreement provides: "If buyers are unable to secure a commitment for financing . . . the agreement is null and void and any payments made hereunder shall be returned immediately." The court finds here that the plaintiff's money was wrongfully detained. Connecticut General Statutes § 37-3a provides that "interest may be recovered and allowed in civil action as damages for the retention of money after it becomes payable. It is clear that Connecticut case law establishes that prejudgment interest is to be awarded if in the discretion of the trier of fact equitable considerations deemed that it is warranted." Aubin v. Miller,64 Conn. App. 781, 796 (2001) at 797, citing Hoye v. DeWolfe Company,61 Conn. App. 558, 564 (2001).
With regard to the refusal to return the $35,000, the plaintiff demanded the return of her money. Defendant Epstein refused to do so CT Page 16802 claiming he was entitled to a commission having produced a ready, willing and able buyer. The court finds that this was not the case since the plaintiff was not an "able" buyer since she could not get financing. On July 20, 2000, she informed both defendants Epstein and Gooding that she could not get financing and therefore she is entitled to interest under the statute from that date.
The court also finds that the plaintiff failed to prove that the defendant seller was in violation of the CUTPA statute regarding unfair trade practices. The court does find that she simply did not know what to do and relied on Epstein. The court finds that Epstein had a duty to return the money to the plaintiff on July 20, 2000 when she reported her inability to obtain financing.
Even after the parties reached agreement to each take $17,500, he still refused to return the money claiming he was entitled to a commission. In fact, he was not entitled to a commission and he was not entitled to withhold the money. Nevertheless, he refused to return the money to the buyer and seller as they had agreed. Accordingly, the court finds that Epstein is in violation of the CUTPA statute and accordingly awards attorney's fees to the plaintiff from him.
The court therefore finds that the plaintiff is entitled to the return of the $35,000 being held by Epstein plus interest as required by statute from Epstein. The court also finds that Epstein is in violation of the CUTPA statute and awards legal fees to the plaintiff from him in a sum to be determined at a future hearing on the amount of legal fees only.
D. Michael Hurley Judge Trial Referee