## SALLY ANN DURSO *v.* CHARLENE VESSICHIO
## (AC 23234)

Foti, Schaller and Flynn, Js.

Argued May 2—officially released August 26, 2003

*Walter A. DeAndrade,* for the appellant (defendant).

*Eric P. Smith*, with whom, on the brief, was *Marisa A. Bellair*, for the appellee (plaintiff).

*Opinion*

SCHALLER, J. The defendant, Charlene Vessichio, appeals from the judgment of the trial court rendered in favor of the plaintiff, Sally Ann Durso, after a trial to the court. On appeal, the defendant claims that the court improperly (1) applied General Statutes § 36a-290[1] and (2) determined that the defendant had converted the plaintiff's one-half interest in deposited funds held in joint bank accounts. We affirm the judgment of the trial court.

The following facts were admitted, stipulated to by the parties or reasonably found by the court on the basis of the evidence presented. On June 9, 2000, Salvatore Vessichio, the father of the plaintiff and the defendant, established joint survivorship bank accounts at Bank-

___

[1] General Statutes § 36a-290 provides: "(a) When a deposit account has been established at any bank, or a share account has been established at any Connecticut credit union or federal credit union, in the names of two or more natural persons and under such terms as to be paid to any one of them, or to the survivor or survivors of them, such account is deemed a joint account, and any part or all of the balance of such account, including any and all subsequent deposits or additions made thereto, may be paid to any of such persons during the lifetime of all of them or to the survivor or any of the survivors of such persons after the death of one or more of them. Any such payment constitutes a valid and sufficient release and discharge of such bank, Connecticut credit union or federal credit union, or its successor, as to all payments so made.

"(b) The establishment of a deposit account or share account which is a joint account under subsection (a) of this section is, in the absence of fraud or undue influence, or other clear and convincing evidence to the contrary, prima facie evidence of the intention of all of the named owners thereof to vest title to such account, including all subsequent deposits and additions made thereto, in such survivor or survivors, in any action or proceeding between any two or more of the depositors, respecting the ownership of such account or its proceeds.

"(c) This section shall not apply to any deposit account or share account where any owner died before October 1, 1971, nor shall it apply to any action pending on that date."

Boston, now Fleet Bank, in East Haven. The accounts were established in the names of Salvatore Vessichio, Sally Ann Durso and Charlene Vessichio. Salvatore Vessichio died on August 17, 2000. At the time of his death, the balance of the joint accounts totaled $86,618.

After her father's death, the defendant withdrew all of the funds from the accounts. From those funds, the defendant paid $11,933.80 toward her father's funeral expenses and debts. The defendant then deposited the remaining $74,684.20 in an account in her name at Webster Bank.[2] The plaintiff later demanded that the defendant pay her $43,309, a sum representing one-half of the funds originally deposited in the joint accounts. The defendant refused to pay the plaintiff any of the moneys that she demanded.[3]

On November 2, 2000, the plaintiff commenced this action premised on the legal theory that the defendant had converted the funds. On August 2, 2001, the plaintiff amended her complaint and alleged that she and the defendant were owners of the funds and, specifically, that the defendant had converted the funds.

After a trial to the court, on June 18, 2002, the court found in favor of the plaintiff and awarded her $37,342.10.[4] The defendant thereafter filed a motion for an articulation of the court's memorandum of decision. The court denied the motion, and the defendant filed a motion for review of the court's decision denying

---

[2] The defendant later transferred those funds to an account in her name at Salomon, Smith and Barney.

[3] In her brief, the defendant does not dispute the plaintiff's argument that the plaintiff enjoyed an interest in one-half of the funds. Instead, the defendant argues that regardless of the plaintiff's ownership interest in the funds, the first holder to withdraw the funds, on the death of Salvatore Vessichio, is the owner of any of the funds withdrawn.

[4] The court awarded $37,342.10 because that is half of the original $86,618 on deposit less one-half of the $11,933.80 that the defendant paid to cover the funeral expenses and debts of Salvatore Vessichio ($5966.90).

articulation. On November 11, 2002, we granted the motion for review, but denied the relief requested therein. The defendant appealed.

I

The defendant claims that the court misapplied § 36a-290[5] because (1) the court improperly concluded that § 36a-290 (a) operates only as a bank protection provision and (2) § 36a-290 (b) does not apply when the account holders are alive. We disagree.

A

The defendant first argues that the court misapplied § 36a-290 because it improperly concluded that § 36a-290 (a) operates only as a bank protection provision. According to the defendant, the two clauses comprising § 36a-290 (a) should be read independently of one another. It is the defendant's position that the first clause of § 36a-290 (a) grants a joint account holder the right to withdraw all of the funds from the account, places all other joint account owners on notice of that right and results in a *first in time race to the funds* rule.[6] The second clause of § 36a-290 (a), the defendant argues, stands independently of the first clause and serves to protect the bank from liability when it permits a joint account owner to withdraw any amount of funds from the account. We disagree with the defendant's reading of the statute.

---

[5] Although the defendant, in her appellate brief, presented her claims in a different order than they are addressed here, we address the defendant's claims in the following manner because to determine whether the court properly concluded that she had converted the funds, we must first analyze whether the court properly (1) determined that the plaintiff had an ownership interest in one-half of the deposited funds, and (2) applied General Statutes § 36a-290 (a) and (b).

[6] The defendant specifically states in her brief: "This portion of General Statutes § 36a-290 (a) does not seem to spell out that banks are protected but spells out the understanding of persons opening a joint account—in effect giving each coholder a right to withdraw all and a warning to each of them that the other can withdraw all the funds at any time."

The trial court disagreed with the defendant's interpretation and, in its memorandum of decision, stated that § 36a-290 (a) "is of no assistance to the defendant, as that section is designed to protect the bank in situations such as this one." In other words, the court determined that the entire text of § 36a-290 (a) served to function as a bank protection statute. The court then relied on § 36a-290 (b) to award the plaintiff damages.[7]

We first set forth our standard of review. The defendant's claim involves a determination of the construction to be given § 36a-290 (a). Statutory construction presents a question of law, and our review is, therefore, plenary. *Chadha* v. *Charlotte Hungerford Hospital*, 77 Conn. App. 104, 111, 822 A.2d 303 (2003).

In *Fleet Bank Connecticut, N.A.* v. *Carillo*, 240 Conn. 343, 691 A.2d 1068 (1997), a case concerning § 36a-290 in the context of a third party creditor's setoff rights, our Supreme Court touched on the meaning of § 36a-290 (a) with respect to an account holder's property rights. The court stated that § 36a-290 "provides that, when an account is created in the names of two or more people, such account is deemed a joint account, and any part or all of the balance of such account, including any and all subsequent deposits or additions made thereto, may be paid to any of such persons during the lifetime of all of them. . . . Thus, under this statute, a bank is authorized to release up to the entire balance of a joint account to each and any coholder who so demands. In our view, this authorization not only pro-

___

[7] Although the court did not expressly state that it found that the defendant had converted the funds, we conclude that the court's reliance on General Statutes § 36a-290 (b), the court's statement that § 36a-290 (b) is "clear and unequivocal," and the award of damages implies that the court determined that she had converted one-half of the deposited funds. See *Klug* v. *Inland Wetlands Commission*, 30 Conn. App. 85, 92, 619 A.2d 8 (1993) (in interpreting judgment, intention of court is determined by considering all parts of judgment and effect must be given to that which clearly is implied). We review the court's finding of conversion in part II.

vides *protection* for payor banks but also recognizes a sufficient property interest in each coholder to warrant characterizing all such deposits as a debt due to each coholder sufficient to trigger a third party creditor's statutory right to execute against the entire balance of the joint account." (Citation omitted; emphasis added; internal quotation marks omitted.) Id., 349–50. The court recognized that the two sentences in § 36a-290 (a) should be read together and that they jointly serve to express the legislature's intent to protect banks by allowing banks to release any amount of funds to any joint account holder without subsequent liability. The court also recognized the right of each account holder to withdraw any or all of the money on deposit in the account and that the provision giving that right to withdraw codified a sufficient property interest in each account holder to substantiate a " 'debt due.' " Id., 350; see also *Grass* v. *Grass*, 47 Conn. App. 657, 660–61, 706 A.2d 1369 (1998).

The specific property interest recognized by the court in *Fleet Bank Connecticut, N.A.*, is limited, however, to permit a creditor of any of the holders of a joint account to exercise setoff rights against the account in its entirety. *Fleet Bank Connecticut, N.A.* v. *Carillo*, supra, 240 Conn. 350. In other words, § 36a-290 (a) recognizes the account holder's right to the moneys as a debt due by the bank. It does not recognize an account holder's rights to the moneys as between holders. See *Grodzicki* v. *Grodzicki*, 154 Conn. 456, 463, 226 A.2d 656 (1967) ("language of [General Statutes § 36-3, the predecessor of § 36a-290] does not determine the respective rights of the parties inter vivos").[8]

---

[8] The defendant's reliance on *Ardito* v. *Olinger*, 65 Conn. App. 295, 298, 782 A.2d 698, cert. denied, 258 Conn. 942, 786 A.2d 429 (2001), also is misplaced because in that case, the plaintiff was not an owner of the joint account.

The defendant also cites *Grodzicki* v. *Grodzicki*, supra, 154 Conn. 463, for the proposition that the two clauses of § 36a-290 (a) should be read independently of one another. We disagree with that reading of *Grodzicki* because our Supreme Court expressly labeled § 36-3 (1),[9] the predecessor of § 36a-290 (a), as a "bank protection [statute]." (Internal quotation marks omitted.) Id., 461; see also *Fleet Bank Connecticut, N.A.* v. *Carillo*, supra, 240 Conn. 358 (*Berdon, J.*, dissenting).

Additionally, our Supreme Court decided *Grodzicki* twenty-seven years before the legislature divided § 36a-290 (a), the former § 36-3 (1), into § 36a-290 (a) and (b).[10] Public Acts 1994, No. 94-122, § 133, reorganized, consolidated and streamlined our banking statutes to clear up internal inconsistencies and interpretations.

---

[9] General Statutes (Rev. to 1962) § 36-3 provides: "JOINT DEPOSITS AND ACCOUNTS. (1) When a deposit has been made in this state in any state bank and trust company, national banking association, savings bank, industrial bank or private bank, or an account has been issued in this state by any building or savings and loan association or federal savings and loan association or credit union, in the names of two or more persons and in form to be paid to any one or the survivor, or survivors, of them, such deposit or account and any additions thereto made by any of such persons after the making or issuance thereof, together with all dividends or interest or increases credited thereon, shall be held for the exclusive use of such persons and may be paid to any of them during the lifetime of all of them or to the survivor or survivors after the death of one or more of them, and such payment and the receipt or acquittance of the person or persons to whom such payment is made shall be a valid and sufficient release and discharge for all payments so made. The making of a deposit or issuance of an account in such form shall, in the absence of fraud or undue influence, be conclusive evidence, in any action or proceeding respecting the ownership of, or the enforcement of the obligation created or represented by, such deposit or account, of the intention of all of the named owners thereof to vest title to such deposit or account, including all additions and increments thereto, in such survivor or survivors."

The first sentence of that provision is the foundation for General Statutes § 36a-290 (a). The second sentence in that provision is the foundation for § 36a-290 (b).

[10] The first clause in General Statutes (Rev. to 1962) § 36-3 (1) ultimately became General Statutes § 36a-290 (a), and the second clause of § 36-3 (1) ultimately became § 36a-290 (b).

See 35 H.R. Proc., Pt. 2, 1992 Sess., p. 590; see also *Fleet Bank Connecticut, N.A.* v. *Carillo*, supra, 240 Conn. 358 n.3 (*Berdon, J.*, dissenting). The legislature made technical changes to § 36a-290 by dividing former § 36-3 (1) into § 36a-290 (a) and (b). See 35 H.R. Proc., supra, p. 590. The advisory committee responsible for the recodification effort was comprised of four groups. Conn. Joint Standing Committee Hearing, Banks, Pt. 1, 1994 Sess., pp. 105–106, remarks of Gayle S. Fierer, chief administrative attorney for the department of banking, concerning House Bill No. 5367, "An Act Concerning the Reorganization of the Banking Laws of Connecticut." One of those groups specifically was concerned with deposits, and focused its efforts to consolidate, modernize and technically revise § 36a-290 to remove internal inconsistencies. Id. It is inconceivable to us, given the efforts to reorganize and clarify the banking laws, that in addition to subdividing § 36a-290 (a), the two clauses in § 36a-290 (a) were intended by the legislature to be read independently of one another in the manner proposed by the defendant.

We therefore conclude that the court properly determined that § 36a-290 (a) serves only as a bank protection provision and does not determine ownership interests in the disputed funds.

B

The defendant next argues that the court improperly determined on the basis of § 36a-290 (b)[11] that the plaintiff was entitled to one-half of the amount of funds

---

[11] General Statutes § 36a-290 (b) provides: "The establishment of a deposit account or share account which is a joint account under subsection (a) of this section is, in the absence of fraud or undue influence, or other clear and convincing evidence to the contrary, prima facie evidence of the intention of all of the named owners thereof to vest title to such account, including all subsequent deposits and additions made thereto, in such survivor or survivors, in any action or proceeding between any two or more of the depositors, respecting the ownership of such account or its proceeds."

originally on deposit in the joint accounts because, according to the defendant, § 36a-290 (b) does not apply when the account holders are alive. We disagree.

At the outset, we note that the defendant challenges the court's finding that following Salvatore Vessichio's death, she improperly transferred all of the deposited funds in the joint bank accounts into a private account and treated them as her own. The defendant argues, in support of that claim, however, that *prior* to Salvatore Vessichio's death, § 36a-290 (b) would not properly apply. That is not the precise issue before this court in the context of the defendant's claim on appeal, however. We therefore focus our review of the claim with respect to the court's application of § 36a-290 (b) *following* the death of Salvatore Vessichio, one of the holders of the joint bank account. That involves a question of statutory interpretation. Our review is therefore plenary. See *Gelinas* v. *West Hartford,* 65 Conn. App. 265, 275, 782 A.2d 679, cert. denied, 258 Conn. 926, 783 A.2d 1028 (2001).

In support of her position, the defendant cites *Grodzicki* and *Monachelli* v. *Mechanics & Farmers Savings Bank,* 13 Conn. App. 662, 538 A.2d 1089 (1988).[12] Those

---

[12] In her brief, the defendant argues that the "personal deposit account and agreement" (agreement) that was issued by BankBoston permitted the bank to pay out all accounts funds to any person named on the accounts. The defendant has failed to provide this court with a copy of the agreement. A review of the file, however, provides a summary of the agreement in the defendant's trial brief. In the defendant's June, 2002 brief, she stated that the "Personal Deposit Account Agreement, page 10, 'Joint Accounts,' . . . states that the balance in the account may be paid to any person named on the account during the lifetime of all of them."

Even if we accept the defendant's understanding and interpretation of the agreement, it does not help her position. According to the defendant's interpretation, the bank is permitted to release any amount of the funds on deposit in the joint accounts to any named account holder. Although that may be true, and appears to parallel the language of General Statutes § 36a-290 (a), that does not mean that the account holders have a right or that title in the funds has automatically vested with the signing of the agreement, especially on the death of a holder in light of General Statutes § 36a-290 (b).

two cases are factually distinguishable from this case. First, those cases concern contests that were based on an alleged breach of duty to pay moneys properly according to the agreement between the depositor and the bank. Next, those cases involve § 36-3,[13] the precursor to § 36a-290 (a) and (b), which, as discussed in part II, underwent substantial revisions and modifications. Finally, and most importantly, those cases involve property disputes in which *all* of the original holders were alive.

In *Grodzicki*, one holder withdrew funds from a joint account to which she had been the sole contributor of the funds on deposit in the joint account. Her fellow holder then brought an action against the sole depositing holder for conversion, claiming an ownership interest in the funds upon their deposit. Our Supreme Court reviewed the two clauses of § 36-3 (1). The court determined that the first clause, the precursor to § 36a-290 (a), served only as a bank protection provision. The second clause, the precursor to § 36a-290 (b), the court held, does not apply when *all* holders of the account are alive. That is, the court held that § 36-3 "does not determine the respective rights of the parties *inter vivos*"; (emphasis added) *Grodzicki* v. *Grodzicki*, supra, 154 Conn. 463; such that one account holder may claim community property rights in funds deposited by another account holder. Likewise, in *Monachelli*, the court stated that the second clause of § 36-3 (1) does not apply with respect to ownership rights when both account holders are alive. *Monachelli* v. *Mechanics & Farmers Savings Bank*, supra, 13 Conn. App. 665.

The defendant's reliance on those two cases for the proposition that § 36a-290 (b) does not apply when one

---

[13] The first clause of General Statutes (Rev. to 1962) § 36-3 (1) is the foundation for current General Statutes § 36a-290 (a). The second sentence in this provision was the foundation for current § 36a-290 (b).

of the holders of the account has died is incorrect. In this case, Salvatore Vessichio, an account holder and the original depositor of the funds, died prior to the defendant's withdrawal of the funds. Joint accounts are governed by § 36a-290 (b), and that provision creates a presumption, rebuttable only by clear and convincing evidence, that the creation of a joint account is evidence of the intent of all the named owners to have the proceeds, on the death of one of them, go to the other joint account holder or holders. See *Cooper* v. *Cavallaro*, 2 Conn. App. 622, 626, 481 A.2d 101 (1984). "The intent of the legislature in enacting General Statutes § 36-3 [the predecessor to General Statutes § 36a-290] was to make the existence of a joint bank account prima facie evidence of ownership by the survivor which can only be rebutted by clear and convincing evidence to the contrary." (Internal quotation marks omitted.) *Bunting* v. *Bunting*, 60 Conn. App. 665, 680, 760 A.2d 989 (2000). Our Supreme Court has stated that the two primary objectives of § 36-3 were (1) to authorize banks to release any or all funds to each holder of a joint account on demand and (2) to establish a presumption of ownership in surviving joint account holders on the *death* of a fellow holder. *Fleet Bank Connecticut, N.A.* v. *Carillo*, supra, 240 Conn. 353 n.13.

Salvatore Vessichio, an account holder, died on August 17, 2000. Under the Supreme Court's rationale, on his death, § 36a-290 (b) became applicable, and title in the account proceeds vested in both the plaintiff and the defendant through their survivorship rights. After title in the proceeds had vested in both the plaintiff and the defendant, the defendant improperly withdrew all of the funds in violation of § 36a-290 (b). The defendant does not contend that the account was not established as a joint bank account. Because joint accounts are governed by § 36a-290 (b), and that statutory subsection creates a presumption, rebuttable by clear and convinc-

ing evidence, that the creation of a joint account is evidence of the intent of all of the named owners to have the proceeds, on the death of one of them, go to the other joint account holder or holders, the defendant had the burden to prove by clear and convincing evidence that there was fraud, undue influence or other improper conduct involved in the creation of the joint account. See General Statutes § 36a-290 (b). To satisfy the standard for clear and convincing evidence, the defendant had to prove that "the evidence induces in the mind of the trier a reasonable belief that the facts asserted are highly probably true, that the probability that they are true or exist is substantially greater than the probability that they are false or do not exist." (Internal quotation marks omitted.) *Miller* v. *Commissioner of Correction*, 242 Conn. 745, 794, 700 A.2d 1108 (1997). Our Supreme Court has defined "clear and convincing" as a very demanding standard that "should operate as a weighty caution upon the minds of all judges, and it forbids relief whenever the evidence is loose, equivocal or contradictory." (Internal quotation marks omitted.) Id., 795.

In this case, the defendant failed to challenge the existence of a joint bank account, or the existence of fraud or undue influence, and our review of the record indicates that she produced no such evidence. In the absence of evidence of fraud or undue influence, the establishment of the bank account in the names of Salvatore Vessichio, Sally Ann Durso and Charlene Vessichio is prima facie evidence, pursuant to § 36a-290 (b), of Salvatore Vessichio's intention to vest title in both the plaintiff and the defendant on his death. Our review of the record and briefs reveals that the defendant made no attempt at trial to rebut the presumption of ownership set forth in § 36a-290 (b).[14] The court there-

---

[14] On appeal, we are limited to review of the file, record and briefs, as the defendant has failed to file trial transcripts with this court.

fore correctly determined, on the basis of § 36a-290 (b),
that the plaintiff had survivorship rights in the proceeds
of the joint bank accounts.

## II

The defendant claims that the court improperly con-
cluded that she had converted the plaintiff's one-half
interest in the account funds. We disagree.

In its June 18, 2002 memorandum of decision, the
court ruled that pursuant to § 36a-290 (b), the plaintiff
held joint title to the funds. The court disagreed with
the defendant's proposition that pursuant to § 36a-290
(a), the deposited funds "become the property of the
one who got to the bank first." That provision, the court
stated, applies only to banks and serves to protect the
bank when one depositor withdraws funds from a joint
account. Accordingly, on the basis of the stipulated
facts, the court found that under § 36a-290 (b), the plain-
tiff had a survivorship interest in the funds, and then
implicitly[15] found that the defendant wrongfully had

---

[15] Because General Statutes § 36a-290 (b) does not provide for damages,
but instead only determines survivorship rights in deposited funds between
account holders, the court's reliance on that specific provision to support
its conclusion that $37,342.10 of the funds belonged to the plaintiff implies
that the court awarded damages on a theory of conversion.

"Ordinarily it is not the function of . . . the Appellate Court to make
factual findings, but rather to decide whether the decision of the trial court
was clearly erroneous in light of the evidence and pleadings in the whole
record. . . . Conclusions of fact may be drawn on appeal only where the
subordinate facts found [by the trial court] make such a conclusion inevitable
as a matter of law . . . or where the undisputed facts or uncontroverted
evidence and testimony in the record make the factual conclusion so obvious
as to be inherent in the trial court's decision." (Internal quotation marks
omitted.) *State* v. *Shashaty*, 251 Conn. 768, 783, 742 A.2d 786 (1999), cert.
denied, 529 U.S. 1094, 120 S. Ct. 1734, 146 L. Ed. 2d 653 (2000); *Karantonis*
v. *East Hartford*, 71 Conn. App. 859, 863, 804 A.2d 861, cert. denied, 261
Conn. 944, 808 A.2d 1137 (2002).

As stated previously, we declined to afford relief on the defendant's motion
for review concerning the trial court's denial of the defendant's motion for
articulation, wherein the defendant requested further clarification as to
whether the court had awarded the plaintiff damages on a theory of conver-
sion. Although we granted review, we denied the underlying relief for further

converted $37,342.10 and awarded damages in the same amount.

Our Supreme Court has defined conversion as "some unauthorized act which deprives another of his property permanently or for an indefinite time; some unauthorized assumption and exercise of the powers of the owner to his harm. The essence of the wrong is that the property rights of the plaintiff have been dealt with in a manner adverse to him, inconsistent with his right of dominion and to his harm." (Internal quotation marks omitted.) *Aetna Life & Casualty Co.* v. *Union Trust Co.*, 230 Conn. 779, 790–91, 646 A.2d 799 (1994). To establish a prima facie case of conversion, the plaintiff had to establish that "(1) the deposit given to the defendant belonged to the [plaintiff], (2) the defendant deprived the [plaintiff] of [her] funds for an indefinite period of time, (3) the defendant's conduct was unauthorized and (4) the defendant's conduct harmed the [plaintiff]." *Aubin* v. *Miller*, 64 Conn. App. 781, 796, 781 A.2d 396 (2001).

A determination by the court as to whether the defendant converted the funds necessarily would involve a finding of fact, requiring the application of the clearly erroneous standard of review. See id. "A factual finding is clearly erroneous when it is not supported by any evidence in the record or when there is evidence to support it, but the reviewing court is left with the definite and firm conviction that a mistake has been made. . . . Simply put, we give great deference to the findings of the trial court because of its function to weigh and interpret the evidence before it and to pass upon the credibility of witnesses." (Internal quotation marks omitted.) Id.

The plaintiff clearly established a prima facie case of conversion. As discussed in part I, the court determined

articulation. Accordingly, the court's finding of conversion is inherent in its decision.

that on the death of Salvatore Vessichio, the plaintiff and the defendant, as survivors, each had a right to the deposited funds under § 36a-290 (b). Therefore, the plaintiff had an ownership interest in some amount of the funds.[16] The defendant in her brief conceded that "[a] short time after Salvatore Vessichio's death, [the] defendant withdrew all the funds from all the accounts and placed same in bank accounts in her name only" for an indefinite period of time. The defendant's actions clearly were unauthorized by the plaintiff because the plaintiff had demanded that the defendant return one-half of the moneys, and the defendant refused to comply with the demand. Finally, the defendant's actions harmed the plaintiff, as she was without her proportionate share of the funds.

We therefore conclude that the court's implicit finding that the defendant converted one-half of the funds was not clearly erroneous.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[16] We will not undertake a new accounting of the funds to determine damages because the court already has calculated damages, and the amount awarded was not specifically challenged on appeal. See footnote 3. We also note, however, that our holding is not intended to imply that General Statutes § 36a-290 (b) creates a presumptive *equal* interest in deposited funds between surviving account holders.