Iraj Rahmati *v.* Parviz B. Mehri
Parviz B. Mehri *v.* Iraj Rahmati
(10437)
(10438)

Peters, Healey, Parskey, Shea and Grillo, Js.

Argued October 15—decision released November 30, 1982

*Lucy V. Katz,* for the appellant (Mehri, defendant in the first case and plaintiff in the second case).

*Harry Cohen,* for the appellee (Rahmati, plaintiff in the first case and defendant in the second case).

PETERS, J. These cases arise out of open-ended oral arrangements under which two physicians were informally associated in the practice of ophthalmology in Danbury and New Milford for a period of two years. In the first case, the plaintiff, Dr. Iraj Rahmati, sued the defendant, Dr. Parviz Mehri, to recover moneys claimed to be due for services rendered. In the second case, in which the parties were reversed, Mehri sued for reimbursement of shared expenses and to recover lost income. After a consolidated trial to the court, judgment was rendered for Rahmati in both cases, and Mehri took a timely appeal.

The trial court's memorandum of decision, supplemented by undisputed evidence in the record,[1] demonstrates the following: After preliminary conversations in early 1976, the parties on or about July 1, 1976, entered into an oral agreement of association. Under that agreement, a new ophthalmologic office was equipped in New Milford to serve as the principal site of Rahmati's practice; in addition, Rahmati had the right to use Mehri's existing Danbury office to see patients on Tuesday evenings and Saturday mornings. Because Rahmati was new in the area, having just completed his residency training, while Mehri was an established and repu-

---

[1] Perhaps because the memorandum of decision was delivered orally, it was in some minor respects inaccurate and incomplete. Rather than require a remand, in the interests of efficient judicial administration, we have determined that we can supplement the memorandum with undisputed evidence contained in the record as a whole. Cf. Practice Book § 3060R. Prudent counsel should, however, have sought the opportunity to obtain rectification of the memorandum in the trial court. See Practice Book §§ 3082, 3096.

table physician, the financial arrangements at this time were that Rahmati was to receive a salary of $25,000 a year as well as 50 percent of whatever emergency earnings he might generate. During the fall and winter of 1976, Rahmati contributed $3124.60 as his share of the equipment for the New Milford office and was paid a monthly salary in accordance with the July agreement.[2]

Early in 1977, the parties began to discuss alternate financial arrangements. In March, having decided to rescind the salary arrangement retroactively as of January 1, they agreed that Rahmati would receive 70 percent of the fees attributable to his patients, who were to be billed by Mehri. Mehri's retention of 30 percent was intended to cover overhead expenses. The arrangement for emergency earnings was left unchanged.

Several further changes in the arrangements between the parties then ensued. In June of 1977, Rahmati proposed that, with respect to the New Milford office, his principal site of practice, he himself would bill his patients, and would share office expenses on a fifty-fifty basis. Although Mehri did not expressly agree to this proposal, his conduct manifested at least grudging acquiescence: he took no steps to evict Rahmati but sought instead to enforce the fifty-fifty sharing of expenses.[3] At this time, the Danbury arrangements continued in force, and the parties' principal disagreement was about moneys due Rahmati for his Danbury patients and

---

[2] Rahmati made no claim that any moneys were owed to him under the agreement for the period prior to January 1, 1977.

[3] Subsequently, in March 1978, Mehri asked Rahmati, as the principal user of the New Milford office, to assume a three-quarter share of the expenses, which Rahmati refused to do. This request confirms Mehri's understanding of the existing arrangements.

moneys due Mehri for the New Milford office expenses. In December of that year, Rahmati withdrew from the Danbury office.

In the summer of 1978, Mehri unilaterally closed the New Milford office, allegedly because of Rahmati's continued failure to pay any of that office's expenses. That action terminated all arrangements between the parties and this litigation followed.

In his appeal from the determination of the trial court that Rahmati was entitled to prevail in both of the cases below, Mehri has filed and briefed six claims of error. The first claim disputes the basic terms of the informal agreements that the trial court found to have existed between the parties. The sixth claim alleges that it was improper to render any judgment against Mehri as an individual when his medical practice was conducted as a professional corporation. The remaining four claims challenge the computation of the $17,011.84 damages that the court awarded to Rahmati. We will consider these claims in the order stated.

The appellant's first argument is that the court erred in its conclusions concerning the nature of the informal association between Rahmati and Mehri. The crux of this argument is that, while Rahmati testified that he had been promised 70 percent of his collected billings, Mehri testified that he had promised to pay no more than one-third or 30 percent. This court is not in a position to resolve such a dispute, since the trial court, lacking definitive documentary evidence, was necessarily much influenced, as its memorandum of decision noted, by its assessment of the credibility of the witnesses.

*Hughes* v. *Contemporary Mission, Inc.,* 180 Conn. 150, 151–52, 429 A.2d 827 (1980); *Johnson* v. *Flammia,* 169 Conn. 491, 497, 363 A.2d 1048 (1975). Whether and on what terms a contractual commitment has been undertaken are ultimately questions of fact which, like other findings of fact, may be overturned only if the trial court's determinations are clearly erroneous. Practice Book § 3060D; *Monroe Ready Mix Concrete, Inc.* v. *Westcor Development Corporation,* 183 Conn. 348, 351–52, 439 A.2d 362 (1981); *Otto Contracting Co.* v. *S. Schinella & Son, Inc.,* 179 Conn. 704, 708, 427 A.2d 856 (1980); *Finlay* v. *Swirsky,* 98 Conn. 666, 671, 120 A. 561 (1923). It is not fatal to a finding of an implied contract that there were no express manifestations of mutual assent if the parties, by their conduct, recognized the existence of contractual obligations. See *United States* v. *O. Frank Heinz Construction Co.,* 300 F. Sup. 396, 399 (S.D. Ill. 1969); *H. B. Toms Tree Surgery, Inc.* v. *Brant,* 187 Conn. 343, 347, 446 A.2d 1 (1982); 1 Restatement (Second), Contracts § 22 (2).[4] The appellant's first claim of error is therefore unpersuasive.

The appellant's sixth claim of error asserts that Mehri could not properly have been held personally liable since his ophthalmologic practice was conducted as a professional corporation. In the middle of the trial, conceding that, in his answer to Rahmati's complaint and in his own suit, Mehri had acted in his own name, Mehri's counsel sought to amend the pleadings to substitute the corporation as defendant and as plaintiff. The court reserved

[4] 1 Restatement (Second), Contracts § 22 (2) reads: "A manifestation of mutual assent may be made even though neither offer nor acceptance can be identified and even though the moment of formation cannot be determined."

decision on this motion, but ultimately failed to rule on it except insofar as it signalled an implied denial by its judgment against Mehri personally. Mehri failed to pursue this claim further in the trial court; see Practice Book §§ 3082, 3096; and instead has assigned it as error on this appeal.

A trial court's refusal to permit amendments to pleadings in the midst of a trial will not be overturned on appeal " 'unless an abuse of discretion is clearly evident.' " *Lawson* v. *Godfried,* 181 Conn. 214, 216–17, 435 A.2d 15 (1980); *Powel* v. *Burke,* 178 Conn. 384, 392, 423 A.2d 97 (1979); *DuBose* v. *Carabetta,* 161 Conn. 254, 263, 287 A.2d 357 (1971). See Practice Book § 176; Moller & Horton, Practice Book Ann. 261–62 (1979). The trial court might properly have disallowed the amendments either because of the unreasonableness of their timing, on the second day of the actual trial, or because of inconsistency between the proffered amendments and the evidence before the court. It is not our function to speculate why the trial court acted as it did. On the present state of the record, the appellant has not proven an abuse of discretion.

The four remaining claims of error assert that the trial court was mistaken in its calculation of the amount of damages to which the appellee was held to be entitled. The court's judgment awarded Rahmati the amount of $17,011.84. That amount was derived as follows: Rahmati was entitled to recover (1) 70 percent of the billings for his services that had been collected by Mehri, essentially billings arising out of the Danbury practice. This figure, 70 percent of $26,613.65, came to $18,629.55. He was also entitled to recover (2) one-third of $8430, which the court designated as emergency income, or an additional amount of $2810. He was further enti-

tled to recover (3) his contribution to the acquisition of equipment for the New Milford office, an amount which, after depreciation, the court calculated at $2500. Finally, he was entitled to (4) $4000 as his share of uncollected accounts receivable. These four items, $18,629.55, $2810, $2500 and $4000, total $27,939.55. As offsets, Mehri was entitled to credit (5) for unpaid expenses attributable to the New Milford office, in the amount of $2135, and (6) for payments made to Rahmati, in the amount of $8792.71, for a total credit of $10,927.71. The appellant takes issue with items (2), (4), (5) and (6).

With respect to item (2), $2810, the appellant argues that the court was in error in concluding that Rahmati was entitled to a one-third share of $8430 as emergency income. The appellant is correct that there was no evidence at trial explicitly supporting such an award under the rubric of emergency income. It is, however, clear from the record that $8430 was claimed as income produced by Rahmati in the Danbury office during the period from September, 1977, to December, 1977, and that the court so understood when the figures were originally presented. Under item (1), in awarding Rahmati 70 percent of the $26,613.65 collected, the court had only taken account of billings from January to September of 1977. It was therefore logical to make an award based upon the September-December period, reduced, as had been the earlier award, to account for the disparity between billings and collections.[5] If the court viewed $8430 as gen-

[5] For January to September, billings of $38,786 had produced collections of $26,613.65, roughly in the relation of three to two. Application of this ratio to the September to December billings would result in the reduction of $8430 in billings to $5620 in collections.

erating $5620 in collections, then the court might have awarded Rahmati 70 percent of $5620 as his share of normal earnings, or 50 percent of $5620 as his share of emergency earnings. The court's choice of the lower amount, while perhaps surprising, cannot be assigned as error by its beneficiary, the appellant.

The appellant's claim of error with regard to item (4) challenges the court's award to Rahmati of $4000 representing one-third of uncollected accounts receivable. For the period from January to September, 1977, billings of $38,786 resulted in collections of $26,613.65, resulting in uncollected accounts in the amount of $12,172.35. The appellant maintains, and we agree, that there is in the record no support for any award for outstanding accounts receivable. Accounting for receipt of payments, once Rahmati and Mehri both billed patients seen by Rahmati, was concededly confused. Furthermore, Rahmati's own testimony limited his claim for recovery to whatever had been collected.[6] In these circumstances, Rahmati's claim must be reduced by $4000.

The appellant, with regard to item (5), the credit for the expenses of the New Milford office, maintains that the trial court made a mathematical error in calculating those expenses for which Rahmati was liable. In oral argument, counsel for Rahmati agreed that the calculation was in error, and that the appellant was entitled to an additional credit in the amount of $1575. Accordingly, we so hold.

The final item that is challenged is item (6), the amount of the credit given to the appellant for pay-

---

[6] We note that the appellee's brief does not directly refute this claim of error.

ments made to Rahmati during the course of 1977. In addition to the amounts noted as eligible for credit by the trial court, the appellant offered at the trial nine checks from Mehri to N. Rahmati, the appellee's wife. These checks concededly were indorsed by N. Rahmati and deposited in a joint bank account to which Rahmati himself had unlimited access. Although Rahmati testified that he did not recall requesting or receiving these checks, he also testified that his wife managed this checking account and occasionally acted as his secretary or bookkeeper. The record is devoid of any evidence to contradict Mehri's statements that these checks were given to N. Rahmati to pay moneys owed to Rahmati. In light of the documentary evidence that supports this claim, which was only indirectly disputed by Rahmati, the appellant is entitled to an additional credit of $2034, representing the amount of these nine checks.

Because the damages awarded to Rahmati must be reduced by $7609 in accordance with the above conclusions, there is error in part. The judgment is set aside and the case is remanded with direction to render judgment as on file except as modified to accord with this opinion.

In this opinion the other judges concurred.