GALLICCHIO BROTHERS, INC. *v.* C & S OIL CO., INC.
(10813)

PETERS, HEALEY, SHEA, GRILLO and COVELLO, Js.

Argued June 7—decision released August 16, 1983

*Nicholas P. Cardwell,* for the appellant (defendant).

*Samuel J. Henderson,* for the appellee (plaintiff).

PER CURIAM. In this action for breach of contract, the court found the issues for the plaintiff. From the judgment awarding damages with interest the defendant has appealed. The issues raised involve the trial court's interpretation of a written contract and its resolution upon conflicting testimony of a claim of set-off.

The court could have reasonably found the following facts: In July, 1973, Gallicchio Brothers, Inc. (hereinafter Gallicchio), agreed to sell to C & S Oil Co., Inc. (hereinafter C & S), its retail fuel oil business, including its trade name, its good will, its trucks, its list of customers and its fuel oil allotment. During the early 1970s, as a result of the oil shortage which gripped the nation, fuel oil was being distributed to retailers under a system of allotments. The agreement of sale required the defendant to pay the plaintiff in four annual installments a sum to be computed from the future sale of

fuel oil to Gallicchio's former accounts.[1] C & S also agreed to pay $30,000 at the time of closing as a deposit toward the payments which would fall due under the agreement.

During the performance of the 1973 agreement, a dispute arose between the parties. The plaintiff accused the defendant of providing inadequate service to former customers of Gallicchio, forcing many of them to seek new suppliers. As a result, C & S could sell the fuel oil originally allotted for former accounts of Gallicchio to new customers of C & S. This resulted in a decrease in the quantity of oil sold to the former Gallicchio customers with a corresponding reduction in the annual amounts due Gallicchio under the agreement. Because of this dispute, the parties entered into a new agreement.

This second agreement, entered into on February 15, 1974, modified the original payment plan.[2] It required

---

[1] The agreement states in part:

"(c) C & S shall pay to Gallicchio as a commission on the sale of home fuel oil, for the agreement not to [compete] and consulting services the following:

"i. First year—3 [cents] a gallon will be paid on all fuel oil delivered to GALLICCHIO accounts.

"ii. Second year—2 [cents] a gallon on all fuel oil delivered to GALLICCHIO accounts.

"iii. Third year—2 [cents] a gallon on all fuel oil delivered to GALLICCHIO accounts.

"iv. Fourth year—1 [cent] a gallon on all fuel oil delivered to GALLICCHIO accounts."

[2] The second agreement states in part:

"1. By letter simultaneous herewith, Gallicchio agrees to assign its present and future rights to its allotment of oil from Texaco, Inc. to C. & S.

"2. C. & S. agrees to pay to Gallicchio, based upon said allotment, the sum of 8 cents per gallon as follows:

"a. Forty Two Thousand ($42,000) Dollars on or before August 15, 1974 (Gallicchio hereby acknowledges receipt of Thirty Thousand ($30,000) Dollars as a deposit to be credited against said Forty Two Thousand ($42,000) Dollars).

C & S to pay Gallicchio eight cents per gallon of fuel oil delivered to Gallicchio customers in four annual payments, but, unlike the original agreement, it listed specific sums and dates upon which payments were to be made. Furthermore, the agreement provided that the parties "contemplate[d] a minimum annual sale to customers formerly of Gallicchio [as well as any new customers supplied by Gallicchio] totaling One Million Four Hundred Thousand (1,400,000) gallons." There-

"b. The sum of Twenty Eight Thousand ($28,000) Dollars on or before August 15, 1975.

"c. The sum of Twenty Eight Thousand ($28,000) Dollars on or before August 15, 1976.

"d. The sum of Fourteen Thousand ($14,000) Dollars on or before August 15, [1977] subject to the terms, conditions and provisions hereinafter set forth.

"3. Said payments called for in paragraph 2 hereof contemplate a minimum annual sale to customers formerly of Gallicchio totaling One Million Four Hundred Thousand (1,400,000) gallons. In addition to said customers existing on the date of sale to C. & S., Gallicchio will continue to supply new customers to C. & S. C. & S. hereby agrees to pay to Gallicchio for said new customers at the rate of 8 cents per gallon, sold to said new customers in accordance with the formula as follows:

"a. On June 30 of each year, commencing in 1974, C. & S. will advise Gallicchio of the total amount of gallonage sold to customers of Gallicchio who were customers as of July 12, 1973.

"b. To the extent that oil supplied to said customers is less than One Million Four Hundred Thousand (1,400,000) gallons per year, the oil supplied to all new customers supplied by Gallicchio in the year of accounting and previous years shall be added to said totals to arrive at a total of One Million Four Hundred Thousand (1,400,000) gallons. Prior to C. & S. having any liability for payments for additional sales described in this paragraph 3, C. & S. shall have the right to deduct from said payment that amount of gallonage less than One Million Four Hundred Thousand (1,400,000) gallons.

"c. To the extent that gallons sold to all customers old and new supplied by Gallicchio in any one year exceeds One Million Four Hundred Thousand (1,400,000) gallons, then over and above that amount, gallonage paid to new customers supplied in that year will be paid for by C. & S. over a four (4) year period in accordance with the same formula set forth in paragraph 2 hereof for existing accounts.

"d. From the payment due on August 15, 1977, any short fall between the amount of gallonage sold in that year or preceding years to Gallicchio customers shall be deducted and the balance paid to Gallicchio."

fore, a provision was inserted, providing: "From the payment due on August 15, 1977, any short fall between the amount of gallonage sold in that year or preceding years to Gallicchio customers shall be deducted and the balance paid to Gallicchio." When C & S failed to make the first payment, Gallicchio brought suit.

In its memorandum of decision, the court determined that the second agreement expressed the final intention of the parties. The court found that the parties intended to contract for four annual fixed-sum payments, with a deduction for any short fall to take place at the conclusion of the four year period. The defendant mistakenly characterizes this as a finding of law and claims that the court erred in its determination.

This court has repeatedly declared that "what the parties intended to encompass in their contractual commitments is a question of the intention of the parties, and an inference of fact." *Bead Chain Mfg. Co.* v. *Saxton Products, Inc.,* 183 Conn. 266, 274–75, 439 A.2d 314 (1981); see *Rahmati* v. *Mehri,* 188 Conn. 583, 587, 452 A.2d 638 (1982); *Hughes* v. *Contemporary Mission, Inc.,* 180 Conn. 150, 152, 429 A.2d 827 (1980); *Hydro-Hercules Corporation* v. *Gary Excavating, Inc.,* 166 Conn. 647, 653, 353 A.2d 714 (1974). As such, the findings of the trial court may be overturned only if clearly erroneous. Practice Book § 3060D; *Rahmati* v. *Mehri,* supra; *Monroe Ready Mix Concrete, Inc.* v. *Westcor Development Corporation,* 183 Conn. 348, 351, 439 A.2d 362 (1981); *Bead Chain Mfg. Co.* v. *Saxton Products, Inc.,* supra, 275; *Otto Contracting Co.* v. *S. Schinella & Son, Inc.,* 179 Conn. 704, 708, 427 A.2d 856 (1980).

The trial court's finding concerning the intent of the parties is supported by substantial evidence. The agreement of February 15 clearly states that it was entered

into in order to modify the previous agreement; the new payment plan unambiguously provided for four annual payments of fixed sums due on specified dates; the final payment was to be made on August 15, 1977; the agreement provided for a "contemplate[d] . . . minimum annual sale" of 1,400,000 gallons of fuel oil to former Gallicchio customers; and, finally, the agreement contained a clause stating, *"[f]rom the payment due on August 15, 1977, any short fall between the amount of gallonage sold in that year or preceding years* to Gallicchio customers shall be deducted and the balance paid to Gallicchio." (Emphasis added.) Reviewing the record as a whole, we conclude that the trial court did not err in determining that the second agreement expressed the final intent of the parties, and that the parties intended a series of four fixed payments with a deduction for the short fall to be taken from the payment due in the fourth year.

Similarly, we find no merit in the defendant's second claim of error. During the performance of the second agreement, C & S delivered fuel oil to ten customers who, in one way or another, were related to the majority stockholder of the Gallicchio corporation, Anthony Gallicchio.[3] In its counterclaim C & S requested a set-off for the unpaid amounts due from these ten accounts. In order to fulfill the "mutuality-of-debts" requirements of General Statutes § 52-139,[4] C & S attempted to

---

[3] For example, Flagler Associates, Kitslane Associates, and Add Enterprises were all businesses with which Anthony Gallicchio was associated. Similarly, Mary Gallicchio LaPenta was Anthony Gallicchio's sister, while Ralph Vassallo was a shareholder and officer of Gallicchio Brothers, Inc.

[4] "[General Statutes] Sec. 52-139. SET-OFF OF MUTUAL DEBTS; PROCEDURE. (a) In any action brought for the recovery of a debt, if there are mutual debts between the plaintiff or plaintiffs, or any of them, and the defendant or defendants, or any of them, one debt may be set off against the other."

"Mutual debts, under our present statute, are cross debts in the same capacity and right and of the same kind and quality." *Lippitt* v. *Thames*

prove that the plaintiff requested C & S to deliver fuel oil to these ten customers and thus was liable for the unpaid amounts still owed to C & S. The trial court denied the set-off, stating "[a]ny oil delivered to the relatives of the plaintiff cannot be used by the defendant to reduce his debt because these deliveries were unauthorized by the plaintiff." The defendant claims that the court erred in its conclusion.

Whether the plaintiff authorized the defendant to make deliveries to third parties is a question of fact, the determination of which can be overturned only if clearly erroneous. Practice Book § 3060D; accord *Czarnecki* v. *Plastics Liquidating Co.*, 179 Conn. 261, 268, 425 A.2d 1289 (1979). On direct examination, Frank Sponzo, president of C & S, testified that Anthony and Daniel Gallicchio, officers of the Gallicchio corporation, authorized him to make deliveries to the ten customers in question. On cross-examination, however, the witness testified that the only basis for this authorization was the list of customers received from Gallicchio. Subsequently, when Anthony Gallicchio testified, he stated he had never authorized the delivery of oil. "It is axiomatic that it is in the province of the trial court to assess the credibility of witnesses." *Hughes* v. *Contemporary Mission, Inc.*, 180 Conn. 150, 151, 429 A.2d 827 (1980), and cases cited therein. Reviewing the entire record, we cannot say the trial court erred in discrediting the testimony of the defendant's witness Sponzo, and in finding that the plaintiff did not authorize the delivery of oil to the customers in question.

*Loan & Trust Co.*, 88 Conn. 185, 199, 90 A. 369 (1914); see *Shippee* v. *Pallotti, Andretta & Co., Inc.*, 114 Conn. 560, 564, 159 A. 494 (1932); *General Consolidated, Ltd.* v. *Rudnick & Sons, Inc.*, 4 Conn. Cir. Ct. 581, 586 (1967); 1 Stephenson, Conn. Civ. Proc. (2d Ed. 1982 Cum. Sup.) § 129.

The defendant's final claim of error is also without merit. The defendant claims that the trial court's decision to award interest was erroneous. This claim, however, is based upon the defendant's claim of set-off which we have rejected. Having properly denied the set-off, we may overturn the decision of the trial court to award interest only if there was an abuse of discretion. See *H. B. Toms Tree Surgery, Inc.* v. *Brant,* 187 Conn. 343, 348, 446 A.2d 1 (1982); *Scribner* v. *O'Brien, Inc.,* 169 Conn. 389, 405–406, 363 A.2d 160 (1975). The defendant makes no claim of an abuse of discretion here.

There is no error.