SALLY MALONEY *v.* PCRE, LLC, ET AL.
(AC 21351)

Foti, Dranginis and Flynn, Js.

Argued January 14—officially released March 26, 2002

*Peter T. Fay,* for the appellants-appellees (defendants).

*Eric R. Posmantier,* with whom, on the brief, was *Andrew P. Nemiroff,* for the appellee-appellant (plaintiff).

*Opinion*

FOTI, J. The present appeals follow a breach of contract action tried before the trial court. The defendants, PCRE, LLC (PCRE), and Real Estate Connecticut, Inc. (Real Estate Connecticut), both doing business as Prudential Connecticut Realty, appeal from the judgment rendered in favor of the plaintiff, Sally Maloney. The defendants claim that the court improperly (1) concluded that they had agreed to spend certain moneys to market a specific real estate project and that this agreement constituted a condition precedent to a modified agreement between the parties, (2) determined that they had breached any contractual obligation owed to the plaintiff, (3) calculated the amount of damages,

if any, caused by their alleged breach, (4) rendered judgment jointly against both defendants when the plaintiff did not present a prima facie case against PCRE and (5) awarded certain declaratory relief in the plaintiff's favor. In her cross appeal, the plaintiff claims that the court improperly (1) denied her posttrial request for leave to amend her claim for relief and (2) failed to award her prejudgment interest. We affirm the judgment of the trial court.

The record reveals the following. In her two count complaint, the plaintiff alleged that at all relevant times she was a licensed real estate agent and the defendants were licensed real estate brokers. On January 12, 1994, the plaintiff entered into a written agreement with Real Estate Connecticut. By the agreement's terms, the plaintiff would be paid 80 percent of all commissions received by Real Estate Connecticut "from the sale of property which the plaintiff showed to and assisted in the sale of to the ultimate purchasers of said property."

The plaintiff further alleged in her complaint that she subsequently showed and assisted in the sale of twenty-one condominium units that were part of a real estate project in Greenwich (Waterford properties). As a result of the sale of each of the Waterford properties, Real Estate Connecticut received a listing commission that totaled 2.5 percent of the sale price for each property. Although the plaintiff's contractual share of those commission payments totaled $556,206, Real Estate Connecticut paid her only $310,629. Despite the plaintiff's demands, Real Estate Connecticut refused to pay her the $245,577 that she claimed was owed to her. The plaintiff also alleged that in December, 1997, Real Estate Connecticut transferred or sold all of its rights, obligations and interests to PCRE. As a result, PCRE received the commissions that were included in the sale of the Waterford properties and thereafter became bound to pay commission fees that were owed to her. The plain-

tiff sought the payments that she claimed both defendants owed her under the contract, interest and other costs.

Although the defendants admitted having entered into a contractual agreement with the plaintiff, they denied that such agreement entitled the plaintiff to receive as compensation for her services 80 percent of commission payments received by the defendants for the Waterford properties. They likewise denied owing the plaintiff any payments arising out of her work involving the Waterford properties.

The defendants also pleaded five special defenses. First, the defendants pleaded the defense of accord and satisfaction in that the parties had entered into a subsequent agreement concerning commission payments owed to the plaintiff and that the defendants had paid all funds owed to the plaintiff under that new agreement. Second, the defendants pleaded the defense of unclean hands. They alleged in that regard that the plaintiff, in at least two instances, improperly had directed the seller to pay commissions owed to them to a third party instead of to the defendants and that the plaintiff improperly had removed documents related to that litigation from their place of business. Third, the defendants pleaded that by virtue of her actions, the plaintiff had breached the covenant of good faith and fair dealing that she owed to the defendants. Fourth, the defendants pleaded that by virtue of her actions, the plaintiff had breached the fiduciary duty that she owed to the defendants. Fifth, the defendants pleaded that insofar as the plaintiff had received commission payments in amounts that exceeded the amounts owed to her under the agreement, they were entitled to a setoff for such excess payments.

The court conducted a hearing in August, 1999, and issued its memorandum of decision on October 2, 2000.

The court found that the January 12, 1994 contract[1] between the plaintiff and Real Estate Connecticut afforded the plaintiff a nonexclusive license to use the name of "The Prudential Connecticut Realty" in her capacity as a real estate agent. The agreement provided for the payment of commissions to the plaintiff after Real Estate Connecticut had been paid commissions by sellers. The agreement was silent on the manner in which commissions were to be divided between the parties other than to specify that commissions "shall be promptly divided between [the defendant] and [the plaintiff] in the proportion to which each is entitled."

The parties did not dispute that the owner of the Waterford properties, BSB Greenwich Mortgage Limited Partnership (BSB), agreed to pay a commission price in the amount of 5 percent of the sale price on each property. That 5 percent payment was further divided so that 2.5 percent of the sale price was paid to the selling broker, and 2.5 percent of the sale price was paid to the listing broker. The plaintiff acted as the listing broker on all of the units that are the subject of this action, and her claim involved only the parties' contractual agreement as to how to divide the listing commissions paid to the defendants.[2]

The court heard evidence concerning the parties' agreement that the plaintiff would receive an 80 percent commission share from the sale of properties with which she had been involved. The court found credible the plaintiff's testimony that the parties had modified their original agreement concerning the division of listing commissions received by Real Estate Connecticut from the sale of the Waterford properties in that the plaintiff had agreed to receive 50 percent, rather than

---

[1] The agreement is entitled "Independent Contractor Agreement."

[2] The court noted that the fact that the plaintiff also acted as the selling broker for several of those units was not relevant to the issues before it.

80 percent, of the listing commissions. The court further found that she had agreed to that lesser percentage of the commissions because Real Estate Connecticut had agreed to spend at least $200,000 for advertising and marketing of the properties. The court concluded that Real Estate Connecticut's agreement to market the Waterford properties constituted a condition precedent to the modified commission sharing agreement.

Both parties agreed that the defendant had spent about $80,000 for advertising and marketing prior to the summer or early fall of 1996. Consequently, the court concluded that Real Estate Connecticut and, subsequently, PCRE had failed to satisfy their obligation under the modified agreement. It further concluded that the defendants could not enforce the modified agreement and that the plaintiff was entitled to enforce the original agreement and thereby receive 80 percent of the commission share. The court also concluded that the defendants had failed to prove any of their special defenses. The court awarded damages to the plaintiff in the amount of $79,077. This appeal and cross appeal followed. Additional facts and procedural history will be set forth as necessary in the context of the parties' claims.

I

APPEAL

A

The defendants first claim that the court improperly concluded that they had agreed to spend $200,000 for advertising and marketing for the Waterford properties and that this agreement constituted a condition precedent to the modified commission sharing agreement between the parties. We disagree.

In her complaint and consistently throughout the course of the proceedings, the plaintiff sought to

recover damages against the defendants based on the original agreement between the parties. The defendants alleged in their special defenses that the parties had created a separate, modified agreement for the listing of the Waterford properties. The plaintiff readily acknowledged at trial that the parties had modified their original agreement specifically to cover the listing of the Waterford properties. The parties did not create a written memorial of that modified agreement and, at trial, hotly contested its terms.

The original employment agreement between the parties did not fix the method by which the parties would share commissions. The court had before it, however, a written agreement entitled "Commission Policy & Procedure," which the parties executed when the plaintiff first began working at Real Estate Connecticut. That agreement provided that the defendants would pay to the plaintiff an 80 percent commission payment. Although that agreement expired by its terms on August 12, 1995, the plaintiff testified that even after the policy expired, her supervisor had informed her that her commission share would remain at 80 percent. It was not contested that both before and after Real Estate Connecticut listed the Waterford properties and for all of the plaintiff's work on other properties, the defendants paid her an 80 percent commission share.

The plaintiff testified that sometime prior to June, 1995, she learned about the Waterford properties and began to use her professional efforts to lure its owner, BSB, to list the properties with her at Real Estate Connecticut. The plaintiff testified that she and others at Real Estate Connecticut believed that other companies had marketed the Waterford properties inadequately in the past. The parties acknowledged that prior to Real Estate Connecticut's involvement, the Waterford properties were considered a failed real estate venture. Real Estate Connecticut's officers recognized that to entice

BSB to award the listing to their company, they would have to agree to commit significant resources to marketing the Waterford properties to ensure sales. The plaintiff testified that representatives from BSB informed representatives from Real Estate Connecticut that they would require the company to spend a minimum of $200,000 to market the Waterford properties. The plaintiff further explained that Casey Jones, then the manager of Real Estate Connecticut's Greenwich office, informed her that for Real Estate Connecticut to undertake that expenditure, the plaintiff would have to agree to accept a 50 percent share of commissions on the listing side for the Waterford properties units. On the basis of the evidence adduced at trial, the court concluded that Real Estate Connecticut had agreed to spend $200,000 to market the Waterford properties and that this agreement constituted a condition precedent to the modified commission sharing agreement between the parties.

We first set forth our standard of review. "If the factual basis of the court's decision is challenged, our review includes determining whether the facts set out in the memorandum of decision are supported by the record or whether, in light of the evidence and the pleadings in the whole record, those facts are clearly erroneous. . . . With regard to the trial court's factual findings, the clearly erroneous standard of review is appropriate. . . . The trial court's legal conclusions are subject to plenary review. [W]here the legal conclusions of the court are challenged, we must determine whether they are legally and logically correct and whether they find support in the facts set out in the memorandum of decision. . . . [T]he interpretation of the contract is a matter of law and our review is plenary." (Citations omitted; internal quotation marks omitted.) *Aubin* v. *Miller*, 64 Conn. App. 781, 786, 781 A.2d 396 (2001).

The defendants claim, essentially, that, even if they agreed to spend as much as $200,000 on marketing, that agreement did not constitute a condition precedent but merely a promise. "A condition precedent is a fact or event which the parties intend must exist or take place before there is a right to performance. . . . A condition is distinguished from a promise in that it creates no right or duty in and of itself but is merely a limiting or modifying factor. . . . If the condition is not fulfilled, the right to enforce the contract does not come into existence. . . . Whether a provision in a contract is a condition the nonfulfilment of which excuses performance depends upon the intent of the parties, to be ascertained from a fair and reasonable construction of the language used in the light of all the surrounding circumstances when they executed the contract." (Citations omitted.) *Lach* v. *Cahill*, 138 Conn. 418, 421, 85 A.2d 481 (1951).

The court characterized the evidence on the issue of the marketing of the Waterfront properties as follows: "The defendants appear to argue that the plaintiff voluntarily agreed to decrease her 80 percent share of the listing broker's commission, which she had been receiving, without receiving any benefit, an interpretation that may speak well for the plaintiff's benevolence, but defies logic in the real estate business."

Although the parties did not produce a written memorial of the modified agreement, the court heard ample evidence concerning the terms of the modified agreement, the circumstances surrounding its execution and the intent of the parties. "[W]hat the parties intended to encompass in their contractual commitments is a question of the intention of the parties, and an inference of fact. . . . As such, the findings of the trial court may be overturned only if clearly erroneous." (Citations omitted; internal quotation marks omitted.) *Gallicchio Bros., Inc.* v. *C & S Oil Co.*, 191 Conn. 104,

107, 463 A.2d 600 (1983). Although the court heard conflicting evidence concerning the modified agreement, the court concluded that "[t]he plaintiff's testimony on this point and all others is found to be credible and logical."

The defendants apparently ask this court to second-guess the trial court's evaluation of the evidence on that issue. They posit that it would have been illogical for the defendants to have agreed to spend $200,000 on marketing and that it would have been illogical for them to have intended to make that commitment a condition precedent to the modified agreement. Although the defendants assert that the plaintiff had, as she testified, agreed to receive 50 percent of commissions, they likewise assert that "[a] far more likely scenario is that [Real Estate Connecticut] only agreed to take the listing and only agreed to spend . . . $77,000 if [the] plaintiff agreed to reduce her commission to 50 percent on the listing side." It is axiomatic that we do not reevaluate the credibility to be afforded witnesses or the weight to be given specific testimony. *K.A. Thompson Electric Co.* v. *Wesco, Inc.*, 27 Conn. App. 120, 126, 604 A.2d 828 (1992).

The evidence demonstrated that both parties recognized that aggressive marketing was needed to sell units in the Waterford properties. The court found credible the plaintiff's testimony that she agreed to forgo substantial commission payments because the defendants were going to spend $200,000 on marketing. The court logically could have inferred that given the plaintiff's commitment so that the defendants could invest such funds in the project, the parties had intended for that expenditure to be a condition precedent. Further, the court logically could have found that it was both logical and reasonable for the plaintiff to have agreed to forgo a large portion of her commission share only because the defendants had agreed to invest $200,000 to market

the Waterford properties. Accordingly, we are unable to conclude that the court's findings as to the terms of the modified agreement are clearly erroneous.[3]

## B

The defendants next claim that the court improperly concluded that they breached any contractual obligation that they owed to the plaintiff. We disagree.

---

[3] The defendants also claim in their principal brief that the court improperly found "that there was a failure of a condition precedent when this theory of the case was not part of the pleadings or the evidence at trial." The defendants argue that the court was bound to render its judgment based solely on the allegations set forth in the plaintiff's complaint. They further assert that the plaintiff neither pleaded nor presented evidence in support of that theory and that the court's actions denied them the opportunity to "prepare for, argue or in any way address this theory of the case."

A plaintiff's ability to recover damages is always circumscribed by the allegations set forth in his or her complaint. *Lundberg* v. *Kovacs*, 172 Conn. 229, 232, 374 A.2d 201 (1977). "[T]he interpretation of pleadings is always a question of law for the court . . . ." (Citation omitted; internal quotation marks omitted.) *Cahill* v. *Board of Education*, 198 Conn. 229, 236, 502 A.2d 410 (1985). Although courts in this state construe pleadings broadly and realistically, the burden remains on the plaintiff to set forth the relevant facts alleged and the issues to be tried so as not to surprise or prejudice the rights of the opposing party. *Cellu Tissue Corp.* v. *Blake Equipment Co.*, 41 Conn. App. 413, 417, 676 A.2d 405 (1996).

The court's judgment is based on a breach of the original agreement. The defendants sought to rely on the modified agreement and pleaded, as a special defense, that they had "paid all funds due [to the plaintiff] under the new agreement or agreements." The defendants alleged the existence of the modified agreement, fully addressed issues related to the terms of that agreement, and the circumstances under which they were made and sought to hold the plaintiff to the commission sharing agreement contained therein. "The defendants, as the parties alleging that there was a modification, bear the burden of proof as to that issue." *Lar-Rob Bus Corp.* v. *Fairfield*, 170 Conn. 397, 402, 365 A.2d 1086 (1976); see also *First Hartford Realty Corp.* v. *Ellis*, 181 Conn. 25, 34, 434 A.2d 314 (1980); *Hess* v. *Dumouchel Paper Co.*, 154 Conn. 343, 349, 225 A.2d 797 (1966).

The defendants mischaracterize the grounds on which the court rendered judgment. The court granted relief to the plaintiff based on the theory of relief set forth in her complaint. Furthermore, we find no merit to the defendants' claim that the court's findings with regard to the modified agreement in any way caused them to suffer surprise or prejudice.

At trial, the parties represented that they had sought to modify their original employment agreement and to create a new agreement solely for the Waterford properties listing. The defendants rely on that evidence and claim that the court improperly concluded that they had breached the original agreement because the parties did not intend for that agreement to apply to the Waterford properties project.

The court concluded that once the modified agreement failed because of the defendants' failure to satisfy the condition precedent, the plaintiff was entitled to commissions as provided in the original agreement between the parties. We are unable to conclude that the court's decision in that regard resulted from an improper application of the law or was unsupported by the evidence adduced at trial.

Our discussion in part I A makes clear that absent any modification, the original agreement between the parties governed all of the plaintiff's sales and listings, professional duties and relationship with the defendants. Likewise, the commission sharing agreement between the parties, as well as the verbal commitments made to the plaintiff after the expiration of the original agreement as to her entitlement to an 80 percent commission share for her work, purported to apply to all of her sales and listings. At the time that the parties sought to modify their original agreement, the defendants were contractually obligated, by virtue of the written commission policy, to pay the plaintiff an 80 percent commission share. The defendants paid the plaintiff an 80 percent share for sales and listings prior to when she began working on the Waterford properties and continued to do so after that time.

The scope of the parties' proposed modified agreement was essentially undisputed; it applied only to the listing commissions for the Waterford properties.

The court found that the defendants were to pay the plaintiff a decreased commission share and, in return, spend $200,000 to market the Waterford properties. We already have determined, however, that the court properly concluded that the modified agreement failed because the defendants failed to satisfy the condition precedent for that agreement.

The court logically could have concluded that the parties intended for the original agreement to govern all of the plaintiff's professional services while she worked with the defendants. It is clear that the defendants sought to *modify* their existing agreement with the plaintiff because its commission sharing terms would have applied to her work on the Waterford properties. In other words, absent a modified agreement, the defendants would have been obligated to pay the plaintiff her customary 80 percent commission share. Despite the fact that the parties might have intended for the modified agreement to govern commissions for the Waterford properties, the professional services rendered on behalf of the defendants by the plaintiff for that project were of the same character as all of her other work for the defendants, and were governed by the provisions and standards set forth in the original agreement.

The legal consequence of the defendants' failure to satisfy the condition precedent to the modified agreement is clear: "If the condition [precedent] is not fulfilled, the right to enforce the contract does not come into existence." *Lach* v. *Cahill,* supra, 138 Conn. 421. The court properly determined that once the defendants could not enforce the modified agreement, the original agreement between the parties applied to the plaintiff's work on the Waterford properties. Consequently, it properly awarded damages that resulted from the defendants' breach of that agreement.[4]

___

[4] Although the defendants consistently had claimed that they did not agree to spend $200,000 to market the Waterford properties, they argue before

C

The defendants next claim that the court improperly measured the plaintiff's damages, if any, caused by their breach. We disagree.

The defendants' argument is based on the premise that the court awarded damages for breach of the *modified* agreement. It follows, they argue, that the plaintiff could not have demonstrated that she suffered any damages from their breach of *that* agreement because, despite their failure to spend $200,000 on marketing for the properties, the plaintiff still received all of the benefits of her bargain with respect to those properties. They point to the undisputed facts that all of the units were sold and that the plaintiff received all of the commission payments due her under the terms of the modified agreement from the sale of those units. In sum, the

this court that the trial court should have considered the fact that they spent approximately $80,000 on marketing and the fact that "there was no definite time frame for [their] promise to spend $200,000 on advertising . . . ." They further argue that they had been "in the process of performing under the modified agreement" when the units began to sell rapidly. They further argue that because all of the units were sold, there was no need for them to continue to spend money on advertising and for the court to have required them to have done so would "result in economic waste." Finally, they assert that "the court should have concluded that the intent of the modified agreement was satisfied and that [the defendants], to the extent practicable, had substantially performed under the modified agreement and, therefore, did not breach the modified agreement."

We are able to dispose of that "substantial performance" claim without much discussion. First, we already have concluded in part I A that Real Estate Connecticut's commitment to spend $200,000 was a condition precedent to the modified agreement. Although the defendants' lesser expenditure may have achieved the desired result in regard to the sale of the units, it did not satisfy the defendants' contractual obligation under the modified agreement. Second, the defendants did not raise that argument before the trial court. Accordingly, there is no indication in the record that the court considered that defense or made any factual or legal conclusions in regard thereto. We reiterate that "our appellate courts do not consider issues of law that were not presented first to the trial court." (Internal quotation marks omitted.) *Taylor* v. *Zoning Board of Appeals*, 65 Conn. App. 687, 697, 783 A.2d 526 (2001).

defendants argue, "[t]he plaintiff offered absolutely no evidence to support a claim that she was in a worse position than she would have been in had [the defendants] spent $200,000."

After finding that the defendants had breached their contract with the plaintiff, the court noted that it would award damages to put the plaintiff in as good a position as she would have been had the contract been performed. It concluded, "[t]he plaintiff did sustain damages because she lost 30 percent of the commissions she would have earned had she not agreed to cut back her share from 80 percent to 50 percent." The defendants claim in their principal brief that the court "essentially determined that the plaintiff suffered 'damages' as a result of having *entered into* the modified agreement, rather than determining whether any damages were caused by the defendants' alleged *breach* of the modified agreement." (Emphasis in original.)

We first set forth our standard of review. We undertake a plenary review of the standards or rule applied to the facts by the trial court. See *Elm Street Builders, Inc.* v. *Enterprise Park Condominium Assn., Inc.*, 63 Conn. App. 657, 664, 778 A.2d 237 (2001). The defendants agree that the court stated the proper rule by which it should measure damages. They argue, however, that the court misapplied that standard and that the evidence adduced at trial did not support its findings of damages. "In making its assessment of damages for breach of [any] contract the trier must determine the existence and extent of any deficiency and then calculate its loss to the injured party. The determination of both of these issues involves a question of fact which will not be overturned unless the determination is clearly erroneous." (Internal quotation marks omitted.) *L. F. Pace & Sons, Inc.* v. *Travelers Indemnity Co.*, 9 Conn. App. 30, 41, 514 A.2d 766, cert. denied, 201 Conn. 811, 516 A.2d 886 (1986).

The court applied the proper legal standard when it assessed the plaintiff's claim of damages. "It is axiomatic that the sum of damages awarded as compensation in a breach of contract action should place the injured party in the same position as he would have been in had the contract been performed. . . . The injured party, however, is entitled to retain nothing in excess of that sum which compensates him for the loss of his bargain. . . . Guarding against excessive compensation, the law of contract damages limits the injured party to damages based on his actual loss caused by the breach." (Citations omitted; internal quotation marks omitted.) *Argentinis* v. *Gould*, 219 Conn. 151, 157–58, 592 A.2d 378 (1991).

We note, at the outset, that the defendants' argument results from their mischaracterization of the basis for the court's judgment. The court did not award damages for the defendants' breach of the modified contract. The court held that the modified contract was unenforceable because the defendants had not satisfied the condition precedent for the modified agreement. See part I A. The court permitted the plaintiff to recover under the original agreement between the parties. See part I B.

The court properly determined, from the evidence before it, that the plaintiff received only 50 percent of the listing commissions from the Waterford properties. Because the modified agreement was unenforceable, the court applied damages based on the defendants' agreement to pay the plaintiff an 80 percent commission. In that regard, the court properly permitted the plaintiff to recover the lost income that she would have realized if the defendants had paid her an 80 percent commission share.

In the present case, the record clearly reveals that this damage amount equaled the 30 percent difference

between the commission payments that the defendants paid the plaintiff for her services and the commission payments that the defendants should have paid the plaintiff under the original agreement.

## D

The defendants next claim that the court improperly rendered judgment jointly against both defendants because the plaintiff did not present a prima facie case against PCRE. We are unable to review the defendants' claim.

In count two of her complaint, the plaintiff sought to recover from PCRE the balance of the commission payments for her work on the Waterford properties. She alleged that in December, 1997, Real Estate Connecticut "transferred or sold all of its rights, obligations and interests" to PCRE and that, thereafter, both entities conducted business under the name "Prudential Connecticut Realty." The record reveals that in their post-trial brief, the defendants argued that the evidence was insufficient to support a prima facie case against PCRE. The court thereafter rendered judgment against both defendants. The court's memorandum of decision, however, does not set forth any factual findings, legal authority or legal conclusions in regard to its decision to render judgment against both defendants.

Despite the fact that the defendants raised the issue before the trial court, they made no effort to acquire from the court the basis for that aspect of its decision.[5] The appellant bears the burden of furnishing this court with an adequate record on which to review the trial court's factual and legal determinations. Practice Book § 61-10. "It is, therefore, the responsibility of the appellant to move for an articulation or rectification of the

[5] In their appellate brief, the defendants concede that the trial court failed to set forth any factual findings relevant to this issue.

record where the trial court has failed to state the basis of a decision . . . [or] to clarify the legal basis of a ruling . . . ." (Internal quotation marks omitted.) *Community Action for Greater Middlesex County, Inc.* v. *American Alliance Ins. Co.*, 254 Conn. 387, 394, 757 A.2d 1074 (2000); see Practice Book § 66-5. The record is not adequate to review the defendants' claim, and we thus decline to afford review.

E

Finally, the defendants claim that the court improperly awarded the plaintiff declaratory relief concerning unpaid commissions for the sale of three units. We disagree.

The following additional facts and procedural history underlie the defendants' claim. On July 23, 1999, and on August 19, 1999, the plaintiff filed requests for leave to file an amended complaint to include, inter alia, a third count. The plaintiff alleged in that proposed third count that BSB had entered into a contract with Real Estate Connecticut that obligated it to pay Real Estate Connecticut a 5 percent commission on the sale price of three separate units in the Waterford properties[6] if Real Estate Connecticut found "a buyer ready, willing and able to buy said real property." The plaintiff alleged that she, working as an agent of either or both of the defendants, provided such purchasers for those units and that the purchasers did purchase those units. She further alleged that BSB had not yet paid to the defendants the commissions for those sales. The plaintiff then alleged that the defendants had refused her demand to be paid her 80 percent share of the commissions from those sales. She sought as relief for her claim "[a] declaration that compensatory damages representing the plaintiff's 80 percent share of the total commissions received by the defendants from BSB be paid to the

---

[6] The plaintiff referred to the sale of units C-15, D-23 and D-24.

plaintiff if and when such commissions are received by the defendants from BSB."

On August 6, 1999, the defendants filed an objection to the plaintiff's July 23, 1999 request for leave to amend her complaint. The defendants argued that the late amendment would prejudice their ability to defend against the proposed third count and that in the event that the court decided to grant the request, they should be afforded a reasonable period of time in which to prepare a motion to strike, other responsive pleadings or a motion to implead BSB as a third party defendant. When the trial began on August 19, 1999, the court and the plaintiff's attorney engaged in a colloquy regarding the requests for leave to amend and the defendants' objections thereto.

The court noted that in counts one and two of her original complaint, the plaintiff already had alleged that she was owed an 80 percent commission from the sale of the three units that were the subject of the proposed third count of the complaint. The plaintiff's counsel argued that he sought to add count three out of an "excess of caution" because BSB had not yet paid the defendants the commissions for those units.[7] The plaintiff's counsel noted that because the defendants had not received the payments, they had not yet breached their contractual duty to pay the plaintiff her share of the commission payments. Likewise, the plaintiff's counsel argued that whatever the court's decision with respect to the issue of commission share was, it should resolve the issue of what the defendants owed the plaintiff for her services as to those units.

The court stated that it did not see the rationale for adding the third count because its decision as to the plaintiff's commission percentage would apply to all

---

[7] On March 1, 1999, the court awarded the plaintiff a prejudgment remedy by garnishing $250,000 held in an escrow account by BSB for the defendants.

commissions received by the defendants from BSB. The plaintiff ultimately withdrew her request to amend. In its memorandum of decision, the court found that the plaintiff's efforts resulted in the sale of those three units despite the fact that they had not closed prior to the date that her employment for the defendants terminated. The court also noted that pursuant to her contract with the defendants, the defendants were entitled to retain a reasonable portion of the plaintiff's commission share as to those units " 'to defray costs and expenses attributable to the servicing and closing of the sale after termination.' " Although the court noted that the parties disputed the appropriate setoff to defray the defendants' costs and expenses, the court ruled that "whatever the ultimate amount of commission paid to the listing broker, the plaintiff is entitled to 80 percent thereof . . . ."

On appeal, the defendants challenge the court's ruling in that regard on two grounds. First, they argue that the court improperly granted declaratory relief because the plaintiff did not seek such relief in the operative complaint. Second, they argue that even if the court could have properly granted such relief, the evidence did not warrant it in this case.

1

We first address the defendants' claim that the plaintiff's complaint precluded the court from awarding declaratory relief for the three units that were the subject of the proposed third count of the complaint.

The interpretation of pleadings is an issue of law. As such, our review of the court's decisions in that regard is plenary. *Forte* v. *Citicorp Mortgage, Inc.*, 66 Conn. App. 475, 484, 784 A.2d 1024 (2001). Our courts enforce the well established rule that precludes litigants from alleging one cause of action and recovering on another. A court may not grant relief on the basis of an unpleaded

claim. *Stafford Higgins Industries, Inc.* v. *Norwalk*, 245 Conn. 551, 575, 715 A.2d 46 (1998). "The modern trend, which is followed in Connecticut, is to construe pleadings broadly and realistically, rather than narrowly and technically. . . . Although essential allegations may not be supplied by conjecture or remote implication . . . the complaint must be read in its entirety in such a way as to give effect to the pleading with reference to the general theory upon which it proceeded. . . . As long as the pleadings provide sufficient notice of the facts claimed and the issues to be tried and do not surprise or prejudice the opposing party, we will not conclude that the complaint is insufficient to allow recovery." (Internal quotation marks omitted.) *Forte* v. *Citicorp Mortgage, Inc.*, supra, 484–85.

Likewise, variations between facts or issues alleged in a complaint and facts or issues raised at trial do not necessarily preclude a court from basing its decision on the facts or issues actually litigated at trial. See *Tedesco* v. *Stamford*, 215 Conn. 450, 457, 576 A.2d 1273 (1990), on remand, 24 Conn. App. 377, 588 A.2d 656 (1991), rev'd, 222 Conn. 233, 610 A.2d 574 (1992). "A variance in the factual aspect of a case which does not prejudice the opponent, and which does not change the theory of the cause of action, should not under ordinary circumstances be allowed to make voidable an otherwise sound judgment. . . . Of course, a variance which alters the basic nature of a complainant's cause of action cannot be condoned." (Citations omitted; internal quotation marks omitted.) *Willow Springs Condominium Assn., Inc.* v. *Seventh BRT Development Corp.*, 245 Conn. 1, 63, 717 A.2d 77 (1998).

Furthermore, our Supreme Court has noted that the absence of a claim from the pleadings does not automatically preclude a trial court from addressing that claim. "[A] court may, despite pleading deficiencies, decide a case on the basis on which it was actually litigated and

may, in such an instance, permit the amendment of a complaint, even after the trial, to conform to that actuality. . . . Indeed . . . even in the absence of such an amendment, where the trial court had in fact addressed a technically unpleaded claim that was actually litigated by the parties, it was improper . . . to reverse the trial court's judgment for lack of such an amendment." (Citations omitted.) *Stafford Higgins Industries, Inc.* v. *Norwalk*, supra, 245 Conn. 575.

In the present case, we are unable to conclude that the court's declaratory award with respect to the units was improper. We rely first on the fact that a broad and realistic interpretation of the complaint put the defendant on notice that the plaintiff sought to litigate the issue of her compensation, more specifically her commission share, for the work she performed as to all the units in the Waterford properties. She specifically referred to the three units at issue here in her complaint. To that extent, we do not conclude that there was a pleading deficiency. The plaintiff alleged that she showed and assisted in the sale of the units and that the defendants had failed to pay to her the 80 percent share to which her agreement with the defendants entitled her. Although she alleged that the defendants had received a commission from the sale of the properties, that variation from the proof adduced at trial that showed that the defendants had not, as of that time, received the commission payments from BSB, did not preclude the court from adjudicating the plaintiff's commission share of such payments. That issue was the basis for her action and the basis for the court's award.

Second, the parties actually litigated the issue of the plaintiff's commission for the sale of the three units. The plaintiff introduced evidence in that regard. The defendants argued at trial that the evidence did not support an award concerning those units because the

defendants had not yet received the commission payments arising from their sale.

Third, we note that by way of the plaintiff's garnishment order and her attempts to amend her complaint, the defendants were on notice that the plaintiff sought to have the court resolve the issue of commissions for the three units as well as for the others. The court's award did not depart from the general theory on which the plaintiff based her action or from how it was presented at trial. As such, we are unable to see how the court's consideration of the issue caused the defendant to suffer any surprise or prejudice.

2

We now address the defendants' claim that the evidence adduced at trial did not support the court's award with respect to the three units. We review the court's factual findings under the clearly erroneous standard of review. To the extent that the court has drawn legal conclusions from the facts found, our review is plenary.

The defendants argue that "the court's own findings do not support the award of declaratory relief." The court found that the ultimate sale of the three units resulted from the plaintiff's efforts prior to when she left the defendants' employ in December, 1997. The court noted that the contract between the parties provided that the defendants were entitled to retain a reasonable portion of the plaintiff's commission to defray the costs and expenses expended to finalize the sale and closing following her departure from the company. The court further noted that as it had issued a garnishment order dated March 1, 1999, for $250,000,[8] the commissions had not yet been paid to the plaintiff. The court also noted that the contract between the parties provided that the defendants were not obligated to pay

[8] See footnote 7.

commissions to the plaintiff until they had received such payments upon passage of title from the seller to the buyer.

The defendants appear to argue that because the court acknowledged that the defendants' reasonable fees and expenses for the sale of the three units was still in dispute, and because the defendants had not yet received commission fees from BSB for the units and were not yet contractually bound to pay commissions to the plaintiff, the court was unable to award the declaratory relief that it did. We disagree.

The court's discussions of the issue in its memorandum of decision, as well as prior to trial, evince the court's understanding that the issue of commissions for the sale of the three units was a real dispute between the parties and that despite the fact that the defendants were not obligated to pay the plaintiff commission payments until they themselves received such payments, the issue of the plaintiff's commission for the units demanded resolution. The plaintiff's counsel expressed reservations about not resolving the issue at trial and the hardship such an omission would cause the parties, who would possibly have to endure the long and costly process of relitigating the same issue in a subsequent proceeding.

Practice Book § 17-54 provides that the court may award declaratory relief "as to the existence or nonexistence (1) of any right, power, privilege or immunity; or (2) of any fact upon which the existence or nonexistence of such right, power, privilege or immunity does or may depend, whether such right, power, privilege or immunity now exists or will arise in the future." Practice Book § 17-55 permits a court to award such relief if the following conditions are met: "(1) The party seeking the declaratory judgment has an interest, legal or equitable, by reason of danger of loss or of uncertainty as to

the party's rights or other jural relations; (2) There is an actual bona fide and substantial question or issue in dispute or substantial uncertainty of legal relations which requires settlement between the parties; and (3) In the event that there is another form of proceeding that can provide the party seeking the declaratory judgment immediate redress, the court is of the opinion that such party should be allowed to proceed with the claim for declaratory judgment despite the existence of such alternate procedure."

We afford the court "wide discretion to render a declaratory judgment unless another form of action clearly affords a speedy remedy as effective, convenient, appropriate and complete." (Internal quotation marks omitted.) *Pamela B.* v. *Ment,* 244 Conn. 296, 308, 709 A.2d 1089 (1998). We also are mindful that a "plaintiff should need an authoritative settlement of [the interest at issue] so that he may avoid the expense of future litigation or action." *Bombero* v. *Planning & Zoning Commission,* 40 Conn. App. 75, 80, 669 A.2d 598 (1996).

We conclude that the present forum afforded the court an appropriate opportunity in which to resolve the issue. Nothing prevented the court from issuing such relief in circumstances, as here, where the plaintiff demonstrates a controversy that either now exits or will arise in the future. As our Supreme Court has noted, one of the benefits of such relief "is to enable parties to have their differences authoritatively settled in advance of any claimed invasion of rights, that they may guide their actions accordingly and often may be able to keep them within lawful bounds, and so avoid the expense, bitterness of feeling and disturbance of the orderly pursuits of life which are so often the incidents of law suits." *Sigal* v. *Wise,* 114 Conn. 297, 301, 158 A. 891 (1932).

The issue before the court was not hypothetical. The court recognized that commissions still had not been paid to the defendant and that the defendants were entitled to a setoff before the plaintiff would be paid. Nonetheless, the defendants were bound to pay commissions to the plaintiff, and the court properly chose to apply its decision as to the other units to the sale of the three units that were the subject of the proposed third count of the complaint. There is nothing improper about affording such relief where it is necessary "to determine rights which will arise or become complete only in the contingency of some future happening." Id., 302.

## II

## CROSS APPEAL

### A

The plaintiff first argues that the court improperly denied her request to amend her complaint to comport with the evidence presented at trial. We disagree.

The following additional facts and procedural history underlie the plaintiff's claim. The evidentiary hearing for the trial concluded in August, 1999. On June 14, 2000, the plaintiff filed a request for leave to amend her complaint, seeking to add, inter alia, a prayer for punitive damages as provided in General Statutes § 31-72.[9] The defendants thereafter filed an objection to that request. The court, relying in part on the fact that the plaintiff had filed her request approximately ten months following the hearing, denied her request. It explained that "[g]ranting the plaintiff's motion at this time would

---

[9] General Statutes § 31-72 provides in relevant part: "When any employer fails to pay an employee wages in accordance with the provisions of sections 31-71a to 31-71i, inclusive, or fails to compensate an employee in accordance with section 31-76k . . . such employee . . . may recover, in a civil action, twice the full amount of such wages, with costs and such reasonable attorney's fees as may be allowed by the court . . . ."

be prejudicial to the defendants who tried the case on the theory that the plaintiff was an 'independent contractor,' as was stated numerous times in the contract she signed with Prudential, and not an employee."

"Whether to allow an amendment is a matter left to the sound discretion of the trial court. [An appellate] court will not disturb a trial court's ruling on a proposed amendment unless there has been a clear abuse of that discretion. . . . It is the [plaintiff's] burden in this case to demonstrate that the trial court clearly abused its discretion." (Internal quotation marks omitted.) *Mastrolillo* v. *Danbury*, 61 Conn. App. 693, 696, 767 A.2d 1232 (2001).

The trial court may permit an amendment to pleadings at any time. *Drew* v. *K-Mart Corp.*, 37 Conn. App. 239, 242, 655 A.2d 806 (1995). Although our courts have been liberal in permitting amendments, that liberality is restrained by certain considerations. "Amendments should be made seasonably. Factors to be considered in passing on a motion to amend are the length of the delay, fairness to the opposing parties and the negligence, if any, of the party offering the amendment." *Wagner* v. *Clark Equipment Co.*, 259 Conn. 114, 128, 788 A.2d 83 (2002).

In denying the plaintiff's motion, the court made reference to the length of the delay and the prejudice that the late amendment would have caused the defendants. We note that the plaintiff failed to offer the court any explanation for her failure to seek the relief she sought in her amendment at any time prior to trial or immediately thereafter. Despite the plaintiff's assertion that amending the complaint to permit her to recover damages as an employee would visit no harm to the defendants, the court reasonably found to the contrary. The defendants proceeded with their evidence and arguments at trial based on the theory that the plaintiff

was seeking relief as an independent contractor. The plaintiff correctly points out that our Supreme Court has held that real estate salespersons may be found to be employees and thus fall within the ambit of relief afforded by § 31-72. *Tianti* v. *William Raveis Real Estate, Inc.*, 231 Conn. 690, 700, 651 A.2d 1286 (1995). Nevertheless, it would prejudice a defendant for a plaintiff to amend his or her complaint to seek relief under that theory after the evidentiary phase of a trial where neither party addressed the issue. As our Supreme Court stated in *Tianti*: "The determination of the status of an individual as an independent contractor or employee is often difficult . . . and, in the absence of controlling considerations is a question of fact." (Internal quotation marks omitted.) Id., 696.

Obviously, the plaintiff needed to allege facts in her complaint and to produce evidence at trial to substantiate her allegations. Likewise, the defendants were entitled to receive notice of that issue to have the opportunity to refute the plaintiff's evidence in support of that issue and to produce evidence to the contrary, should they have so desired. We conclude that the court acted well within the bounds of its discretion in denying the plaintiff's motion.

B

The plaintiff next claims that the court improperly failed to award her prejudgment interest as provided by General Statutes § 37-3a.[10]

The trier of fact may award prejudgment interest, as an element of damages, for the detention of money after it becomes payable if equitable considerations deem that such interest is warranted. *Aubin* v. *Miller*, supra,

[10] General Statutes § 37-3a provides in relevant part: "[I]nterest at the rate of ten per cent a year, and no more, may be recovered and allowed in civil actions . . . as damages for the detention of money after it becomes payable. . . ."

64 Conn. App. 798. An award of such interest is an equitable determination lying within the trier's sound discretion. *Rapin* v. *Nettleton*, 50 Conn. App. 640, 651, 718 A.2d 509 (1998). The determination "is one to be made in view of the demands of justice rather than through the application of an arbitrary rule." (Internal quotation marks omitted.) Id.

"A trial court must make two determinations when awarding compensatory interest under § 37-3a: (1) whether the party against whom interest is sought has wrongfully detained money due the other party; and (2) the date upon which the wrongful detention began in order to determine the time from which interest should be calculated." (Internal quotation marks omitted.) Id.

The plaintiff posits that the court's refusal to award prejudgment interest is inconsistent with its finding that the defendants improperly failed to pay her an 80 percent commission share. The plaintiff argues in her principal brief that "[a] finding by the trial court that the defendants breached the 80/20 agreement is equivalent, in all logical respects, to a finding that moneys were wrongfully withheld from the plaintiff by the defendants." That is not necessarily the case. The court specifically found that the defendants had not *wrongfully* withheld the plaintiff's money. The court explained that "[t]here was a bona fide dispute concerning the refusal of the defendants to spend $200,000 on advertising and marketing, and whether that gave rise to any damages. The amount sought was essentially unliquidated in the sense that the exact amount due was unknown and subject to a possible setoff. Moreover, there was no evidence of bad faith or wilfulness on the part of the defendants."

We conclude that the court was well within the exercise of its sound discretion when it declined to award

such interest. A plaintiff's burden of demonstrating that the retention of money is wrongful requires more than demonstrating that the opposing party detained money when it should not have done so. The fact that an award of such interest is discretionary and subject to equitable considerations, rather than automatic, reflects the reality that not all improper detentions of money are wrongful.

"Our courts have seldom found an abuse of discretion in the determination by a trial court of whether a detention of money was wrongful." (Internal quotation marks omitted.) *Solomon* v. *Hall-Brooke Foundation, Inc.*, 30 Conn. App. 136, 147, 619 A.2d 866 (1993). The resolution of the issue is dependent on the circumstances in each case and is, consequently, inherently fact bound. *Middlesex Mutual Assurance Co.* v. *Walsh*, 218 Conn. 681, 702, 590 A.2d 957 (1991). Prior courts have properly awarded prejudgment interest despite the fact that the issues at trial were " 'hotly contested' "; *Solomon* v. *Hall-Brooke Foundation, Inc.*, supra, 147; and courts have found that such interest was warranted because a party had detained money to punish the party who rightly should have possessed it. *Aubin* v. *Miller*, supra, 64 Conn. App. 798. Other courts have upheld a trial court's refusal to award such damages where the trial court found that the party who had detained moneys had made good faith arguments in defense of its actions; *Maluszewski* v. *Allstate Ins. Co.*, 34 Conn. App. 27, 39, 640 A.2d 129, cert. denied, 229 Conn. 921, 642 A.2d 1214 (1994); or where the trial court found that the defendant improperly withheld moneys under a good faith belief, bolstered by the advice of counsel, that an agreement was enforceable. *Hoye* v. *DeWolfe Co.*, 61 Conn. App. 558, 564, 764 A.2d 1269 (2001).

In the present case, the court concluded not only that the parties had engaged in a bona fide dispute as to whether such commission payments were owed to

the plaintiff, but that the exact amount of the payments was uncertain. Furthermore, the evidence at trial unequivocally demonstrated that for a considerable period of time, the plaintiff submitted written requests to the defendants solely for a 50 percent commission share and that she first requested payment for unpaid commission payments in excess of that amount after she left the defendants' employ. Given the evidence before it, the court acted well within the bounds of its sound discretion when it declined to award prejudgment interest.

The judgment is affirmed.

In this opinion the other judges concurred.